# 𝕎𝔥𝔢𝔢𝔩𝔦𝔫𝔤.

RICHARD BURKE *et al.* VS. SUPERVISORS OF MONROE COUNTY.

## January Term, 1870.

1. Where a rule is asked in the circuit court against the board of supervisors, in the nature of a writ of *certiorari*, and also to show cause why a *mandamus* should not be awarded, the former to revise the proceedings and reverse its order setting aside an election at which the petitioners claim to have been duly elected to certain county offices, and the latter to compel it to declare the election of said officers, as shown by the returns certified by the officer conducting the election, and grant them certificates of election, and no objection is made to the process in the circuit court, it is too late to claim in the appellate court that it is not a proceeding by *certiorari* in due form ; and the rule awarded for the *mandamus* must be regarded as only ancilliary to the writ prayed for, which was the writ of *certiorari*.

2. At an election for county officers, four persons are permitted to deposit ballots who were not registered, and who were subsequently, and before the whole vote was counted, declared by the election officers to be improper voters. On being called before the officers they were sworn as to the character of the ballots deposited by them, and four ballots were destroyed in accordance with their statements, which does not change the general result of the election. The election officers certify certain parties as having received the highest number of votes. The board of supervisors set the election aside on the ground of the irregularity mentioned, no objection being made by the parties who are returned as having received the highest number of votes, some of them being present when the order is passed, and order another election. Subsequently the parties so returned petition the circuit court for a writ of *certiorari* to supervise the proceedings of the board of supervisors. HELD:

    I. That there was no irregularity in the election, in fact or law, that would be sufficient to invalidate the election, according to the provisions of section 28 of the act of November 13th, 1863.

II. It was a proper case for the supervision and control of an inferior tribunal by the circuit court, and necessary to secure the rights of the parties and the people.

III. Notwithstanding that the order of the board of supervisors setting aside the election was made without objection, it was competent for the court to supervise the proceedings by writ of *certiorari.*

Richard Burke and others, who claimed to be elected township officers for Union township, Monroe county, filed their petition in the circuit court of Monroe county, on the 3rd day of December, 1868, alleging that they were duly elected to the offices of township clerk, &c., at an election held on the 22d day of October, 1868; that the board of supervisors had failed and refused to declare them so elected, but had on the contrary declared the election null and void, set it aside, and ordered another election. The petitioners asked a writ of *certiorari* compelling the board to send up all the poll books, orders, &c., in relation to the election; that a *mandamus* issue compelling the board to enter a resolution declaring who was elected, and that a copy of the same be delivered to the persons so declared elected, and that the board be ordered to set aside the order for the subsequent election.

A rule was granted against the board in accordance with the prayer of the petition. The board made answer, through its clerk, that at the meeting held on the 4th of November, 1868, notice of a contest as to the election of township officers, was presented by Alfred Phillips and others, and before considering the notice, it appearing to the board that the officers conducting the election had entertained a challenge as to the right to vote of certain parties, long after they had voted and their ballots had been placed in the box; that the claim of these challenged parties to vote had been decided adversely, and they had been called and sworn as to how they voted, and upon their sworn statement as to the *political* character of the ballots they voted, and before the vote of the township was counted, a number of ballots was

taken from the box and destroyed. That it did not appear that the ballots so removed had been previously marked, but it did appear that the election officers had no means of identifying them as the ballots voted by the parties whose right to vote had been questioned. By reason of which irregularity the board had set aside the election and ordered a new one.

It appeared on the trial that there were four parties whose votes were challenged; that two voted with each political party, and that two ballots of each political party were destroyed; that these four parties were not upon the list of registered voters of the township. That at the November session of the board when the election was set aside, several of the petitioners were present, and no exception was offered or noted to the decision of the board as to the order so setting aside the election; and that the petitioners received the highest number of votes cast at the election.

The court below, on the 1st of January, 1869, dismissed the rule and gave costs against the petitioners, on the ground, as alleged in a written opinion made a part of the record, that no exception was taken to the order setting aside the election at the time it was made, or notice of contest given before; but it held that the conduct of the officers of the election did not vitiate the election.

The petitioners brought the case here for review.

Hon. N. Harrison, judge of the circuit court of Monroe county, presided on the trial of the case.

*Stanton & Allison* for the defendant in error.

Is *mandamus* a proper remedy?

"The circuit court shall have the supervision and control of all proceedings before justices and other inferior tribunals, by *mandamus prohibition* or *certiorari.*" Constitution, article 6, section 6. This does not warrant proceedings by *mandamus* in every case of supervison; but the meaning is that, where a state of facts existed which would warrant a

writ of *mandamus* at common law, such should be the remedy. So with the writs of prohibition and *certiorari.*

The board of supervisors is an "inferior tribunal." *Cunningham* vs. *Squires,* 2 W. V. R., 422. And in the supervision of their proceedings *certiorari* is the proper remedy. *Ibid.* 2 Va. Cases, 268.

"A supreme court has power by the common law to review the proceedings of all inferior tribunals, and to pass upon their jurisdiction and decisions of questions of law. But unless a statute confers the power of reviewing determinations of inferior tribunals upon questions of fact, such determinations are conclusive, and cannot be reversed on *certiorari.* The court can only review errors in law." 1 Tidd, (3d Am. ed.,) 398, note *a,* and numerous authorities there cited.

"When the proceedings of the court below (inferior tribunals,) are in any stage of them different from the course of the common law, whether in civil or criminal cases, the writ of *certiorari* is the only proper process to correct any error that may have occurred, unless some different process is given by statute." *Ibid. Com.* vs. *Ellis,* 11 Mass., 466; *Macaboy* vs. *Com.,* 2 Va. Cases, 270; and other authorities cited in Tidd.

The framers of the constitution evidently intended to extend to the circuit court the common law power vested in supreme courts, and only that. No other or different process is given in this State by statute. In fact, the legislature intended to make the action of the supervisors final. No supervisory process of any kind is provided or contemplated. The circuit court derives its power independent of legislation—by virtue of the constitution. Now repeated by statute of December 29, 1868, extra session of 1868, page 99. *Certiorari* to correct proceedings of inferior tribunals, is not a writ of right, but is a matter of sound discretion in the court. 1 Tidd, 398, note *a,* and American authorities there cited.

"And before granting it, the court will look into the

record and the circumstances attending the process; and if the error be such as does not affect the substantial justice of the case, but is in the forms of proceedings only, the writ will be refused." *Idem.*

As to *mandamus*:

"The writ of *mandamus* is a proper remedy to compel inferior tribunals to perform the duties required of them by law; but it will not be granted unless the petition alleges facts sufficient, if proved, to show that such court has omitted a manifest duty. It must contain not only the affirmative allegations of proceedings necessary to entitle the party to the process prayed for; but it must also be averred that other facts, which would justify the omission complained of, do not exist." *Hoxie vs. Com'rs of Somerset,* 25 Maine, 333; Moses on Mandamus, 19.

The authority to issue the writ does not exist as a prerogative power of the courts in America, but is derived by grant, through the constitutions or legislative enactments, and when the power has been granted in general terms to a court, it is to be governed by the common law rules as to when it is proper to be issued. *Kentucky vs. Dennison,* 24 Howard, 65; *Matter of James Turner,* 5 Ohio Rep., 543; Moses on Mandamus, 17.

It gives no right, not even a right of possession. In order to lay the foundation for issuing the writ, there must have been a refusal to do that which it is the object of the *mandamus* to enforce, either in direct terms, or by circumstances distinctly showing an intention in the party not to do the act required. Moses on Mandamus, 18; 3 Stephens' N. P., 2292. Redf. on Railways, 441, n. 5.

It lies where there is a right and no other remedy; but from the authorities before cited, *certiorari* is the specific and proper remedy in this case.

By virtue of the statute of 9 Anne, 20, it lies for refusal of admission where a person is entitled to a city or town office, and for a wrongful removal when a person is legally

possessed. 3 Blackburn, 264. This statute is not in force in this State.

But it will not lie to justices to compel them to come to a particular decision, as to make an order of maintenance on a particular parish. Strange, 894–5; 3 Black. Com., 265, n. 11. Nor to compel any of the Inns of court to admit a person as a student, or to assign reasons for their refusal. *Wooler* vs. *S. of T. Jur.*, 4 B. and C.; 5 Dowl and Ry. It will lie to restore to his office a clerk of court ousted from his office by the illegal appointment of another person. *Dew* vs. *Five Judges of Sweet Springs*, 3 Henning & Munford, 1 to 47; 2 Tucker's Commentaries, 202; and see *Booker* vs. *Young*, 12 Grattan, 303; *Smith* vs. *Dyer*, 1 Call, 562.

Did the board err? No person shall be allowed to vote unless he shall have been registered, and whose name shall not appear on the registry books. Acts of 1867, page 83, sections 19 and 20.

Must return the register immediately after election, to the board of registration. Acts of 1867, page 83, and acts of 1868, page 126.

Inspectors shall sign two certificates of election, seal up the ballots, and within three days deliver the ballots, poll books, and one of the certificates, to the clerk of supervisors. Acts of 1863, p. 121–2, sec. 30.

The board of supervisors shall be the judges of the election, qualifications and returns of all township officers. Shall convene on the twelfth day after election, when the clerk shall lay before them the ballots, poll books, inspectors certificates, &c. If they deem it necessary, may require the attendance of the inspectors or other officers or persons present at the election, and examine them under oath respecting the same, and take such orders as shall seem proper to procure correct returns and ascertain the true result, and may adjourn from day to day. Acts 1863, page 122, section 31.

The foregoing sections clearly authorize the board to determine that no person has been properly elected, and to

order another election, notwithstanding the subsequent sections authorize them to declare who was elected, and to issue credentials.

Section 32 of the act of 1863, which provides for their declaring the result by resolution, excepts cases where notice in writing has been previously filed with their clerk, or presented at their meeting before the resolution is passed, of the intention of any person voted for to contest the election of any one, or his qualification. In such case, a day shall be appointed to hear evidence, &c. It appears that in one case at least, this notice had been given, but further proceedings were superceded by the action of the board in rejecting the returns and ordering a new election, in which action the contestant was satisfied. It will be seen that the board did act, exercising their judgment as to how their action should be, and therefore, the rule to show cause was properly discharged.

*Mandamus* only lies where the board refuses to act as the law requires, and never to compel them to reverse an erroneous act, or to exercise their judgment in a particular way.

There is nothing in the record of the supervisors (at least before the court) to show the proofs before the supervisors upon which their judgment was based, and this of itself is a sufficient reason for the discharge of the rule. The record does show the board acted fully: "It appearing to the board that the election was not conducted in accordance with law, it is therefore ordered that the returns of the same be set aside;" and "it appearing to the board that the late election in Union township was irregularly conducted, it is ordered that an election be held,"&c. These entries are a sufficient reply to an application for a *mandamus*. See *Matthews* vs. *Wade*, 2 W. Va. Rep., 464. If the action of the board was erroneous, *certiorari* is the proper and only remedy, and then the court can only act on the face of the record. Matters *dehors* the record cannot be investigated.

The only part of the record before this court, showing

any facts upon which the decision of the court was based, is the answer, under oath, filed by Wm. A. Munroe, clerk of the board, which states that a notice of contest was presented by Alfred Phillips and others, at the proper time; that before considering the matters set forth in the notice, it appearing to the board that the officers conducting the election had entertained a challenge as to the right of certain parties to vote, long after they had voted and their ballots had been placed in the box; that the election officers then decided adversely to their right to vote, and called them up, when they were sworn as to the *political character* of the tickets they voted, whereupon a number of ballots were taken from the box and destroyed. It did not appear that the ballots so removed had been previously marked, but it did appear that the election officers had no means of identifying them as the ballots voted by the parties questioned. The complainant should demur, or plead specially to the return. Code, 657.

This answer is not traversed or demurred to. The number of ballots so taken from the box and destroyed is not shown by the record, unless as it may be inferred from the poll book. It will therefore be seen that 49 names are certified as voting, four of whom are *italicised*, namely: No. 10, Alex'r Brown; 33, J. W. Bare; 38, Henry Wikle; and 39, A. C. Vass. It is certified that 45 votes were cast. The strong inference is, that those four persons were the persons decided to be improper voters, and that number of ballots taken from the box.

Whether the four ballots taken from the box were of the same political cast as that of the four persons rejected, did not appear. It is ;improbable that they were the actual ballots of the persons rejected, and the action of the election officers was clearly improper and illegal. The ballots of four persons who had the right to vote, and who properly tendered their ballots, were not counted; four others said by these officers to have been illegal, were counted in their stead. Even if of the same political character, that could

only apply to the State and National officers voted for at the same time and upon the same ticket. There is no telling how they voted (any of these eight persons) for township officers. But forty-five votes were counted out for any office. The majorities in favor of the plaintiffs, as appears on the tally sheet, range from one to five. The four votes improperly destroyed may have changed the result in every case.

That is, if the four illegal votes placed in the box were all for the plaintiffs, and the four destroyed all against them, if the election had been properly conducted the plaintiffs would all have been defeated. Had the four taken from the box been against the plaintiffs, and been left in the box and all counted, still but two of the plaintiffs (eleven in number) would have been elected.

This is a joint action by eleven plaintiffs, and should be jointly sustained, if at all, and cannot be sustained jointly for all unless the proceedings below were improper as to all. See Redfield on Railways, 442, note.

The statement in the opinion of the court below that *two* ballots were destroyed, is not borne out by the record, and the same may be said of the statement that they were of opposite sides. That, we presume, means simply of opposite politics generally; but they may not have been of opposite sides as to all of the plaintiffs and their representative competitors. If not as to any one or more of them, and it being uncertain as to which one, it should be acted on by the board as though all may have been on the same side.

But if the Judge's statement is to be taken as correct, it is but the statement of the proof as made before him. The proof before the supervisors, upon which they acted, may have been very different, and this case must be tested by the light before the board of supervisors, and not by that which may be subsequently made to appear in the circuit court. The ground of defence may be sufficiently presented by the return made by the defendants, and the same may,

and properly should be, looked to and considered by the circuit court in passing upon the question of a peremptory *mandamus. Sights* vs. *Yarnalls,* 12 Gratt., 301; *Booker* vs. *Young,* 12 Gratt., 307.

The rule was properly discharged for the reasons stated in the opinion of the court below. Exceptions should have been taken to the decisions of the board, and the facts proved, or the evidence before the board should have been properly placed on the record, otherwise it will be presumed the board acted correctly. See *Shepherd* vs. *McQuilken,* 2 W. V. Rep., 90.

But if, for any reason, the judgment below can be sustained, the appellate court will not reverse it, although an erroneous reason may have been assigned for it. This is well settled by this and other courts.

BROWN, *President.*

This was a rule in the nature of a writ of *certiorari,* and also to show cause why a *mandamus* should not be awarded. The former to revise the proceedings and reverse the order of the board of supervisors of Monroe county, setting aside the election at which the plaintiffs claimed to have been duly elected to the several county offices; and the latter to compel the said board to declare the election of said officers, as shown by the election returns certified by the respective officers conducting said election, and grant them a certificate thereof respectively. No objection was made to the process in the court below, and it is too late to claim in the appellate court that it is not a proceeding by *certiorari* in due form, and the rule for the *mandamus* must be regarded as only ancilliary to the writ prayed for in the petition, which was the writ of *certiorari.*

Upon the rule the record and proceedings of the board are brought up, together with the polls and tally lists, showing the number and names of the persons voting, the persons and offices voted for, and the votes for each, with the oaths and certificates of the officers respectively conducting

the election, and the answer of the board sworn to by their clerk, to the said rule.

Upon inspection of the proceedings it appears that there are four more names of persons voting than there are ballots counted or returned. That four persons whose names are *italicised* in the list, voted, who were not entitled to vote, and on discovery of the fact, four ballots were taken from the ballot box to correspond, but it was possible that the four ballots withdrawn may not have been the ballots of the said parties not legally entitled to vote; and this is the only irregularity in the said election alleged on the part of the board, and was the sole ground on which the board set aside the election as to the petitioners.

The circuit court held the election valid, and the petitioners duly elected as appeared by the said returns, they having the highest number of votes respectively, and that they were in law entitled to certificates of election accordingly, and also to a *mandamus* to compel the said board to issue such certificates to the parties respectively entitled. And in this ruling the circuit court was unquestionably right, because it was a proper case for the supervision and control of an inferior tribunal by the said circuit court, and necessary in the case to secure the rights of the parties no less than of the people. *The People* vs. *The Board of Police*, 39 N. Y., 506; *The People* vs. *Board of Pilots*, 54 Barb.

And the alleged irregularity in the election as set forth in the return of the board to the *certiorari* was not such as in fact, nor in law, would be sufficient to invalidate the said election, according to the provision of section 28 of the act of November 13th, 1863. Session acts, p. 128.

But the court further held that the resolution of the board setting aside said election could not be questioned, because no objection had been taken to the same at the time, by any of the petitioners or any one else. But in this the court erred, because there could be no obligation upon the officers elected nor upon the voters, who are also parties interested, to dance attendance on the board in order to make objec-

tious, respectively, upon the hypothesis that the board would set aside the election without notice to any concerned, and without lawful cause.

This being the only error in the cause, the judgment of the circuit court ought to be reversed, but without costs to the plaintiffs in error; and the cause remanded to the circuit court of Monroe to be further proceeded with, in conformity to the views above stated.

The other judges concurred.

JUDGMENT REVERSED.