## No. 7845.

### STATE EX REL. A. BARBIN VS. SECRETARY OF STATE.

Under the laws now in force in the State, prescribing the manner in which election returns and tally-lists shall be forwarded by the returning officers to the Secretary of State, and the compilation and promulgation of said returns shall be made by the latter officer, his duties are purely ministerial, without any discretion whatever on his part.

If he has made the compilation and promulgation upon other returns than those prescribed by the law, he must make them over again, in a way to conform strictly to the Statute.

The writ of *Mandamus* lies to compel him so to do.

But the Decree of the Court, issuing the Writ, does not decide the question of title to the office to which the Relator claims to have been elected ; it only gives him a *prima facie* title to the office in controversy.

A PPEAL from the Fifth District Court, parish of Orleans. *Rogers, J.*

A. & W. Voorhies and F. C. Zacharie for the Relator and Appellant: The Statutes of 1877 and 1878 provide exactly for the manner in which election returns shall be forwarded to the Secretary of State and by him tabulated and promulgated. The very object of those laws is to take away from him all discretionary power in that respect. In the case at bar, that officer has, under compulsory process of Court, tabulated the official returns of election with spurious returns. He must be compelled by Mandamus to correct his mistake. His reason, that he has exhausted his power and cannot legally make another compilation and promulgation, is untenable. 7 Bush (Ky.) 527 ; 29 Ill. 414; 4 W. Va. 371 ; McCreary's Am. Law of Elections, §§ 321, 322 ; 2 Gray, 370.

Our Courts, under our Code of Practice, have even more extensive powers to issue the writ of Mandamus than those of the common law. 1 Rob. 470.

J. C. Egan, Attorney-General, for Defendant and Appellee :

The mandamus should be refused—

First—Because it does not appear from the record that the relator has been elected Judge, and he cannot therefore be so declared.

Second—That this disputed question of fact cannot be litigated in a proceeding by mandamus.

Third—It is only pre-ascertained rights that can be enforced by law.

Fourth—The relator has adequate relief at law by direct suit against Blackman to obtain any rights he may have.

Fifth—The Secretary of State had discretion as to whether he would count the vote from the disputed poll, and this discretion could not be controlled either to make him count it or to prevent him from counting it.

Sixth—The law does not require the Secretary of State to make but one official promulgation of the result of a general election.

Seventh—This is evidently an effort to try the question of title to office. Sec. 77, High on Extraordinary Legal Remedies.

James Lingan on the same side :

Authorities cited : Moses on Mandamus, pp. 17, 18 ; 3 Stephens' Nisi Prius, 2291 ; 1 Swift Dig. 564 ; 4 Hill, 581 ; McCreary on Elections, sec. 98 ; 29 An. 610 ; 15 An. 464 ; 47 Pa. 292 ; 45 Mo. 350 ; 33 N. Y. 603 ; 27 An. 514 ; 9 An. 577 ; 1 Kansas, 270 ; 7 Bush, (Ky.) 527 ; 29 Ill. 414 ; 2 Gray, 370.

The opinion of the Court was delivered by

Todd, J.   The Relator, Aristide Barbin, alleges, in substance, that at the general election held on the 2nd December, 1879, he was elected Judge of the Twelfth Judicial District Court ; that the official returns of said election, forwarded to the office of the Secretary of State and filed therein, as shown by the annexed certificate of said officer, were as follows :

|           | A. Barbin. | W. F. Blackman. | H. L. Daigre. |
|-----------|-----------|-----------------|---------------|
| Grant ................ | 42 | 356 | 51 |
| Avoyelles............. | 2550 | 318 | 114 |
| Rapides .............. | 352 | 2230 | 201 |
| Total............... | 2944 | 2904 | 366 |

Plurality for A. Barbin 40 votes.

NEW ORLEANS, APRIL, 1880. 581

State ex rel. Barbin vs. Secretary of State.

That in conformity with said official returns, it was the ministerial duty of the Secretary of State to tabulate and promulgate the said result; that he was prevented from doing this by the judgment of the Court (of the Fifth District Court), rendered in the matter of the State ex rel. W. F. Blackman vs. Secretary of State, which commanded the said officer to count certain alleged votes which had been returned by an order of the Parish judge of Grant, sitting as District Judge in chambers, the District Judge, W. F. Blackman, being recused by reason of being party to the proceeding; that in obedience to this judgment, the Secretary of State had included these additional votes in his official count, which changed the result of said election, shown by the returns first forwarded to the Secretary of State, and showed a plurality of twenty three votes for Blackman; that relator had appealed from this judgment, to the Supreme Court of the State, and that this court reversed the judgment of the District Court, and ordered the Secretary of State to tabulate and promulgate the official returns of the election in accordance with the returns first received at his office; that the relator had submitted this decree of the Supreme Court to the Secretary of State, and requested him to comply with the same, and to rectify the error he had committed in counting and tabulating the additional votes returned under the judgment rendered by the Parish Judge of Grant, but that the said officer had declined to comply with this decree and make the tabulation and promulgation demanded by the relator. He prayed for a writ of Mandamus to compel him to do so.

The answer of the Secretary of State to the petition was as follows:

"Will. A. Strong, Secretary of State, defendant herein, for answer to relator's application for Mandamus, denies all and singular the allegations in his petition contained.

"Respondent further avers that he has already, in pursuance of law, made a promulgation of the result of the last general election held in this State, and that he has exhausted the power to make promulgation of the result of the said election.

"Respondent avers that the law does not authorize or direct him to make any amendment of his said promulgation, and that the court has no power to compel him to correct or amend the same."

The Mandamus was refused by the Judge *a quo*, and the relator has appealed.

We learn from these pleadings and the evidence in the record, that the relator and W. F. Blackman were both candidates for District Judge of the Twelfth Judicial District, composed of the Parishes of Rapides, Avoyelles, and Grant. That according to the election returns first forwarded by the returning officers to the office of the Secretary of State, it appeared that the relator received a majority of forty votes. Before

38

such a result, however, could be promulgated, Blackman instituted pro-- ceedings against the commissioners of an election precinct in Grant. Parish for the purpose of having returned the votes from the precinct, which were alleged to have been destroyed or taken from the possession of the returning officers. This proceeding was instituted in the District. Court of Grant Parish, and Blackman being Judge of that Court, recused. himself, and the Parish Judge officiated and rendered an order in chambers, under which these additional returns were forwarded to the· office of Secretary of State. Thereupon proceedings were instituted on the relation of Judge Blackman in the Fifth District Court, Parish of' Orleans, against the Secretary of State, to compel him, by mandamus, to count and tabulate these additional returns from the parish of Grant. The Secretary of State, in answer to that application, alleged in sub- stance that he had received no election returns from ward No. 2, of Grant Parish, but that he had received returns made under protest of two of the three Commissioners of that ward under order of the Parish Court ; that he declined the responsibility of counting said returns, and that his duties relating to the counting of the votes and tabulating the· returns, were purely ministerial.

The mandamus was made peremptory. An appeal was applied for by the Secretary of State, but subsequently abandoned by him ; and one was taken by A. Barbin, the relator in this case, from such judg- ment.

On the trial of the case in the Supreme Court, the judgment of the· lower court was reversed, and as the opinion of our predecessors, ren- dered in that proceeding, bears materially upon the issues presented in· the case before this court, we give it *in extenso :*

" On the merits, we are clear that the Court below erred. The duty of the Secretary of State to compile the returns under the provisions of' Act No. 58 of 1877, and Act No. —, of 1878, is manifestly ministerial to the extent that he acts within the purview of the law. But his duty, if any there was, with reference to the return in question, was clearly not ministerial, as it involved the decision by him under the responsibility of his oath of office, whether or not the judicial Count and return was a valid return. The duty not being ministerial, could not be enforced by mandamus.

" But were it conceded that the function to be exercised by the Secre- tary of State, in passing on the return in question, was ministerial, we are clear that he properly declined to canvass it : because it was not the· return of the returning officer of the Parish of Grant, or the commis- sioners of the election of the poll of Ward Two in that Parish ; nor of the returning officer, because it did not purport so to be ; nor of the com- missioners, because two out of the three, who signed it, protested that

they signed under compulsory order of the Parish Court, and that the ballot-box, as counted under the order of the Court, had been tampered with, and that the result did not correspond with the count at the precinct. In fact, the return was in reality the return of the Parish Judge, who was without authority to that end."

In the meantime, however, before this decree of the Supreme Court had been rendered, the Secretary of State had complied with the order of the Judge of the district Court, and tabulated the contested returns from Grant Parish, thereby changing the result shown by the original returns, and declaring Blackman elected over Barbin by twenty-three majority.

After the decree of the Supreme Court referred to was rendered and submitted to the Secretary of State, having already tabulated and promulgated the returns of election, he declined to amend or alter the same, when this proceeding was instituted by Barbin, the relator, to compel him to do so.

It is resisted by the Secretary of State upon the ground shown in his answer, which is, substantially, that having once tabulated and promulgated the returns of the election, that his power over the matter was exhausted, and he could not legally change, correct, or amend the same ; and it is the issue thus presented that is before us for adjudication.

Section 2, of Act No. 99, of 1878, amendatory of section 38 of Act No. 58, of 1877, provides :

" That it shall be the duty of the returning officer of each parish to make out duplicate returns, to be certified by the clerks of court, in whose office the ballot-boxes are deposited, to be correct. He shall forward one of the returns, and the tally-lists from which it is made, immediately by mail to the Secretary of State ; he shall deliver the other two to the clerk of the court, who shall immediately forward one of them to the Secretary of State, and shall file and preserve the other one in his office."

Section 39, of Act No. 58, of 1877, provides :

" That it shall be the duty of the Secretary of State, or in his default, the State Auditor, not less than ten, nor more than twenty, days after the holding of an election, to begin the compilation of the returns, and shall publish in the official journal the names of all the candidates voted for, the office for which each was voted for, and the number of votes actually cast for each, *as shown by the returns*, and shall declare that the person receiving the greatest number of votes cast for the office for which such person was a candidate has been duly elected."

And section 45 of same act declares :  " That the clerks of the several courts, with whom election returns are filed, shall preserve such

returns until the time of the succeeding general election, and the returns so filed with the Secretary of State and clerks of courts shall be *prima facie* evidence of the result of the election in the Parish for which the returns were made."

These Statutory provisions point out with clearness and precision the duties of the Secretary of State with reference to the counting, compilation, and promulgation of election returns. The very terms of Section 39, of Act 58, above quoted, expressly exclude the idea that this officer can count, compile, and promulgate any other returns of election than those forwarded to him by the returning officers of the several parishes, made out and certified in the manner prescribed by law. There is not a single provision of these statutes that by the most liberal construction would authorize him to count or compile returns forwarded by any other person or authority than these returning officers, or that could give him any color of right to consider or weigh any evidence of the votes of any parish or ward alleged to be lost or destroyed, or abstracted, or, in short, accept or count any return not certified and forwarded in strict conformity to the Statute. In other words, his duties are purely ministerial. This is the construction of the law made by this officer himself, as disclosed by his answer in the case of the State ex rel. W. F. Blackman vs. Will. A. Strong, Secretary of State, above referred to, and such we construe to be the fair intent and meaning of the decision of our predecessors in the same case above quoted. Did the language of the statute leave any room for doubt on this subject, that doubt would be renounced when we consider the time of the legislation and the evils intended to be corrected, growing out of the enormous powers usurped by returning boards in the recent history of our State under the specious pretext of exercising discretionary powers. These statutes were intended to strip, and did strip, the Secretary of State, who was constituted the final canvasser of the election returns, of all discretionary powers, and made his duties strictly and exclusively ministerial. Any irregularities in elections resulting from fraud, violence, or other cause, are to be corrected, not by the Secretary of State, but by the proper proceedings before the courts.

If this view of the subject be correct, and the Secretary of State only authorized to compile and promulgate the result of election returns in strict accordance with the triplicate returns required by the statute, then it would follow as a legal corollary, that whenever this officer, in the discharge of this duty, in any instance, goes beyond the limits and restrictions prescribed by law for the compilation and promulgation of the returns of election, his acts and errors become proper subjects for correction, as fully as those of other executive officers exercising purely ministerial functions. We cannot recognize the doctrine that there is

any thing sacramental in either the compilation or promulgation of election returns by this officer, and that when once done, he has exhausted his powers over the subject, and that his acts in this respect are conclusive, and possess an immunity from revision or correction by any authority or process whatsoever.

It is urged that the objects sought to be accomplished in this proceeding are beyond the legitimate scope and intendment of the writ of mandamus, and we are referred to some very respectable common-law authorities in support of this position. We are of a different opinion.

It has been frequently held that even under the common-law construction of a mandamus proceeding, that it is the proper remedy for the correction of such errors and the redress of such grievances as are complained of in this case. 7 Bush (Ky.) 527 ; 29 Ill. 414 ; 2 Gray, 370 ; 4 W. Va. 371.

Besides, it has been expressly decided by this court that under the articles of the Code of Practice our courts have more extensive powers than those of the common law in issuing this writ. 1 R. 470. It will be seen by a reference to the articles of the Code of Practice that the remedy by Mandamus seems specially provided for just such a case as we have now before us.

Article 830 C. P. provides :

" The object of this order is to prevent a denial of justice or the consequence of defective police, and it should therefore be issued in all cases where the law has assigned no relief by ordinary means, and where justice and reason require that some mode should exist of redressing a wrong or an abuse of any nature whatever."

Art. 831. " This order may be issued at the discretion of the judge, even when a party has other means of relief, if the slowness of ordinary forms is likely to produce such a delay that the public good and the administration of justice will suffer from it."

In this case, not only the rights of individuals are involved, but a great public interest, since the contest is for the office of District Judge, the duties pertaining to which are of such a grave and responsible character, and which so immediately relate to the " public good and the administration of justice," and where these cannot but suffer if the parties are left entirely to " the slowness of ordinary forms " for a settlement of matters pertaining to this controversy.

It must not be inferred from the language of this decision that we have undertaken to decide any thing relating to the merits of this contest or to express an opinion on the subject. The question of title to this office of District Judge is not now before us, and we do not decide who was and who was not elected to it. What we do decide is, that the Secretary of State committed an error in compiling and tabulating any

votes from the twelfth judicial district, except such *as were shown by the returns forwarded by the legal returning officers*, and that error must be corrected. This will give to the relator, A. Barbin, a *prima facie* showing of title to the office in controversy, as provided by a section of the statute above quoted. To this he is entitled ; and no error committed by the Secretary of State in the compilation and tabulation of the returns can affect his status under this *prima facie* showing, and place him in the position of a contestant for an office to which the legal returns of the votes in the office of Secretary of State declare he was elected.

It is therefore decreed that the judgment of the lower court be reversed, and the mandamus applied for is made peremptory, at the cost of the defendant.

Rehearing refused.