The opinion of the court was delivered by
Miller, J.
Under the election act of 1894, No. 181, the police jury is to establish the precincts and number of polling places in the wards of the parish, as many as deemed requisite, provided there shall never be less than one precinct, and the authority is given the jury to subdivide the ward, each subdivision to constitute a precinct. When this duty shall have been performed, the statute prohibits any change in precincts and polling places, except by a vote of two-thirds 'of all *848 the members of the jury, and it is exacted the changing ordinance is-to have the sanction of the two-thirds vote at two different jury meetings. This provision against changing, except under the restrictions stated, is manifestly to guard against improper changes of precincts and polling places once established, known to the voters,, and the policy of the statute is further marked by the prohibition of any such change within six months preceding a general election.. See Secs. 9 and 10 of the act.
The act requires the supervisors of election to give ten days’ notice of every election by posting at each polling place to designate the polling places in the precincts established by the jury, and the-appointment of the commissioners and clerks is directed to be made-by the supervisors, the commissioners to be selected from opposing-political parties. Act No. 181, Secs. 8 and 13.
The action of the lower court, we are called on to review, was-based on the petition of a citizen and candidate for police juror, alleging, substantially, that the police jury, without observing the requisites of law as to the vote required or method of legislation exacted by the act, had undertaken by ordinance to change the limits-of the Eighth Ward, and abolish one of the precincts of the Ninth Ward; that the supervisors of elections under the ordinance propose to locate only one polling place in each of the wards, instead of two as they existed in the election of November, 1894, the first general election after the passage of the election law; the petition alleged that the ordinance making the change was void and the proposed action based on it of the supervisors equally illegal; it was further averred the supervisors had been called on to make selection of good and competent Republican commissioners as by the act required, had refused to state they would comply with the request; and the intention not to make the appointments, but to deny accorded by law to the Republican party was charged with some detail. The relief prayed was a mandamus to compel the supervisors to locate the limits and polling places as they existed prior to the ordinance assailed; and requiring the supervisors to appoint Republican commissioners. An injunction to restrain the execution of the changing ordinance was sought, but that application was withdrawn. The answer in the lower court, and the petition of the supervisors in this court, insists the lower court had no jurisdiction of the issues; that officers clothed with functions connected with elections can not, *849 be controlled by the courts and on this theory we are asked to review and annul the proceedings of the lower court.
The courts have no power to control official action involving the ■ exercise of discretion to be exerted by the officials without limit or-qualification. In this case, if, as charged in the lower court, the ordinance changing the precincts and polling places was passed as-charged, and not denied, without conforming to legal requisites, it-was of no validity, and the precincts and polling places remained as they were before. The duties of the supervisors under the law— were purely ministerial in all respects connected with this controversy — that is, to designate polling places in the wards or subdivisions fixed by the jury, give the notice of election, and make the appointments of commissioners. We can not assent to the proposition that public officials clothed with ministerial functions connected with elections are beyond jndicial control. With due appreciation of the authorities submitted, in our view the supervisors are under the control of the courts with respect to the functions imposed on them involved in this controversy. The other view would displace the-methods of conducting elections provided by law, and substitute the volition or caprice of the official.
In this case there was no proposition to take from the supervisors the selection of the commissioners under the restrictions of the statute. The judgment of the lower court was that the supervisors should locate the polling places, post notice and appoint commissioners in the eighth and ninth wards as fixed in the November election of 1894.
We think the lower court had the jurisdiction to make this decree, and it is only the question of jurisdiction that we can consider on this application. The application to this court is denied.