No. 2841

Second Circuit

---

PARKER v. DEMOCRATIC EXECUTIVE COMMITTEE OF FRANKLIN PARISH

SISSON v. PARKER

(Consolidated)

---

(October 11, 1926. Opinion and Decree.)

---

(*Syllabus by the Editor.*)

1. Louisiana  Digest—Mandamus—Par.  6, 44, 46.

The duty of the Democratic Executive Committee is purely ministerial, and where it fails to perform its duty a mandamus will lie to compel its performance.

2. Louisiana  Digest—Elections  by  the People—Par. 28.

Under Section 28 of Act 97 of 1922 the State Central Committee and local committees of all political parties are specifically recognized as legal committees and governing authorities of such political parties.

3. Louisiana  Digest—Elections  by  the People—Par. 28, 38, 79; Citation and Appearance—Par. 17.

The citation on the chairman of the Democratic Executive Committee is sufficient to compel the committee by mandamus to perform its duty.

4. Louisiana  Digest—Elections—Par.  28, 35.

Where the Executive Committee concluded that irregularities in an election were such that it was impossible to reach a conclusion as to who was elected, they were within their rights to refer the matter back to the voters.

Appeal from the Fifth Judicial District Court of Louisiana, Parish of Franklin. Hon. John R. McIntosh, Judge.

Action by I. O. Parker against the Democratic Executive Committee of Franklin Parish in mandamus proceedings and action by Mrs. Cecelia Sisson against I. O. Parker to have election declared null; consolidated cases for the purposes of trial.

There was judgment for defendants and plaintiffs appealed.

Judgment affirmed.

S. R. Holstein, D. V. Anders, of Winnsboro, attorneys for plaintiffs, appellants.

E. B. Moore, T. V. Berry, of Winnsboro, attorneys for defendants, appellees.

ODOM, J.  I. O. Parker and Mrs. Cecelia Sisson were rival candidates for the office of School Board member from Ward 4 of the parish of Franklin at the Democratic

white primary election held on September 14, 1926.

The commissioners of election made their returns to the Democratic Executive Committee to be canvassed and promulgated according to law.

That committee, after canvassing and considering the returns as a whole, refused to declare either candidate the nominee of the party for said office, for the reason, as stated by it, that the returns, as a whole, showed such gross irregularities that it was impossible for it to determine which of the candidates had received a majority of the legal votes cast.

Whereupon Mrs. Sisson brought suit in the District Court, asking that said election be declared null, void and of no effect and that neither candidate be declared the nominee, and that another primary election be ordered. She set up various irregularities in the election, which we deem it unnecessary to state. She did not specifically allege that she was nominated at said primary.

I. O. Parker, the other candidate, brought mandamus proceedings against the Democratic Executive Committee, setting up that the returns of the commissioners of election showed that he had been nominated for the said office, and asking that the court order said committee to perform its ministerial duty and declare him the nominee.

The parties filed various and sundry exceptions, all of which were overruled by the court below. The suit of Mrs. Sisson versus I. O. Parker was put at issue by answer of the defendant, Parker, and that of Parker versus the Executive Committee by answers of the committee.

The cases were consolidated for purposes of the trial.

The trial resulted in a judgment declaring that:

"The results of said primary election evidenced that neither candidate is entitled to have been declared the nominee or certified as such to the secretary of state, and that a second primary election is legally necessary to determine a nominee * * * and that the action of the said Democratic Executive Committee is approved and affirmed and said committee is hereby directed to order a second primary election herein in a manner and as provided for by the election laws of this state."

Taking up for consideration first the mandamus suit brought by I. O. Parker against the Executive Committee, we find that the said committee has filed in this court an exception to the jurisdiction of the court ratione materiae and an exception of no cause of action.

These exceptions are disposed of by the holding in the case of State ex rel. Trosclair vs. Parish Democratic Executive Committee, 120 La. 620, 45 South. 526, where the court said:

"The judge a quo correctly states the law when he says that if the duties of the Parish Executive Committee are ministerial mandamus will lie to compel their performance."

Citing:

State ex rel. Patton vs. Judge, 40 La. Ann. 393, 4 South. 50.

State ex rel. Barbin vs. Secretary of State, 32 La. Ann. 579.

State ex rel. Supervisors vs. Judge, 48 La. Ann. 827, 19 South. 750.

State ex rel. Corese v. Judge, 48 La. Ann. 847, 19 South. 946.

In these decisions, or some of them, it was specifically held that the duty of the Democratic Executive Committee is purely

ministerial and that where it fails to perform that duty mandamus will lie and that the courts have jurisdiction.

The exceptions were properly overruled by the lower court.

The committee also excepts to the citations.

Citation was served on W. H. Adams, chairman of the committee. The exception to the citation set out that each and every member of the committee should have been served.

Under Section 28 of Act 97 of 1922 the State Central Committee and local committees of all political parties coming within the provisions of the act are specifically recognized as legal committees and the governing authorities of such political parties.

Such committees are especially authorized to make rules and regulations for their own government. We are not informed as to whether the Franklin parish committee had made any rules with reference to the methods by which it might be cited and brought into court; but the chairman of that committee seems to have been recognized as the proper party to represent the committee as a whole, for we note that he acted for the whole committee in certifying the result of the canvass of the returns of the election. We can see no reason why the committee should not be brought into court by citation served upon the chairman as its head, and we are cited to no law which holds to the contrary.

The exception to the citation, we think, was properly overuled.

On the merits, we find that there is practically no dispute as to the facts.

The commissioners of election kept duplicate poll lists. These poll lists purport to show the names of all those who voted in the order in which they voted. These two poll lists introduced in evidence were identical as to the names of the voters and the order in which they voted. They each showed that two hundred and thirteen persons voted.

The commissioners also kept duplicate tally sheets with a detailed check and the count of the ballots found in the ballot box. These tally sheets are identical also as to the number of ballots taken from the box. These tally sheets show that there were found in the ballot box two hundred and twenty-six ballots, or thirteen more ballots than were persons voting, according to the poll lists. Of these two hundred and twenty-six ballots found in the box, one hundred and eleven were marked for Mrs. Sisson and one hundred and fifteen for I. O. Parker. Just how this discrepancy arose no one is able to tell. It is suggested that possibly the two commissioners who made the tally sheets omitted the names of some who voted, and that may be true; but it does not seem probable that they would have omitted as many as thirteen names.

The election was held on September 14 and the returns were made to the committee on the 18th. This suit was tried on October 1, more than two weeks after the election was held. It must have been known by the rival candidates and generally known in the community that there was a discrepancy in the number who voted at the election and the number of votes cast as shown by the ballots counted by the commissioners, and it seems to us fair to assume that if, as a matter of fact, there were thirteen persons who voted and whose names were omitted from

the poll lists one or more of these persons could have been found. In hotly contested local elections, as this one seems to have been, the list of voters is closely checked. Parker, who claims to have received a majority of the votes cast, knew, of course, who had voted, according to the poll lists made by the commissioners. He knew also that there were thirteen more ballots in the box than the poll lists showed should have been there. It would seem, therefore, that if the poll lists had been incomplete he could have shown it. There is no testimony to show that the poll lists are incomplete.

With reference to the ballots in the box, two of the commissioners testified that some of the tickets in the box were folded together and taken out of the box in pairs, but this is disputed by Mr. Harper, who took the tickets from the box.

It appears that the commissioners were furnished with four hundred ballots numbered consecutively according to law. One of the commissioners testified that after the confusion arose at the poll over the discrepancy between the number of ballots in the box and the number of names on the poll lists, he looked at the remaining tickets, and that the next ticket bore the number 215, which would indicate that only 214 tickets were used; but the commissioners did not count the remaining tickets to ascertain if any had been removed other than those in the box. The commissioners were unable to account for the discrepancy.

The lower court found, and all parties conceded, that there was no fraud practiced by the commissioners. The good faith of the commissioners and of the members of the Executive Committee is not questioned. No one is able to account for the discrepancy.

However, the testimony shows that there were two boxes, one in which the ballots for United States senator were deposited and one in which the School Board ballots were deposited. When the boxes were opened it was discovered that some of the ballots for United States senator were deposited in the School Board box. These ballots were transferred to the proper box. And it was further found that some of the School Board ballots were deposited in the "senatorial" box. These transfers were made after the counting had begun, and we think it probable that in making these transfers some of the School Board tickets were in some way counted twice. This may or may not be a correct solution of the discrepancy. The only other solution is that tickets were illegally obtained by someone and the ballot box "stuffed".

There is testimony to the effect that there were only two hundred and forty-six qualified voters in the precinct and that thirty of that number failed to vote, which would show that only two hundred and sixteen persons actually voted. But in determining who were qualified to vote the registration list was checked with the list of those who had paid poll taxes for the years 1924 and 1925, and it may be that there were some who were over 60 years and some under 22 years of age who were not subject to the payment of poll tax. The registration list showed that two hundred and seventy-six had registered.

Considering the returns made by the commissioners and all the testimony in the record, it is patent that there were such gross irregularities in this election as to make it utterly impossible for the court to determine which of the candidates was nominated.

The underlying principle of all elections is to ascertain the will of the majority.

Where the returns are so irregular that it is impossible to ascertain this will the matter should be referred back to the voters. When the Executive Committee in this case took into consideration the returns as a whole, it reached the conclusion that the irregularities were such that it could not determine who was nominated and refused to certify the name of either candidate to the secretary of state as the nominee. We think, under the circumstances of this case, the committee was well within its rights in doing so.

Having reached this conclusion, it is unnecessary for us to pass upon the various issues involved in the suit of Mrs. Sisson versus Parker.