LAND, J.
L. J. Trosclair and James Berry in October, 1907, filed with the chairman of the parish Democratic committee, their respective written notifications of their intention to become candidates for the office of sheriff of the parish of Lafourche at the primary election fixed for January 28, 1908. Both applicants made the money deposits required by the resolution of the committee, and both applicants complied with the requirements of section 11 of Act No. 49, p. 69, of 1906, known as the “compulsory primary law.” The committee met on October 23, 1907, and rejected the application of T. J. Trosclair on the ground that he was not a Democrat, and declared James Berry to be the nominee of the party for the office of sheriff of the parish of Lafourche.
On November 2, 1907, relator filed in the district court of said parish a petition for a mandamus to compel the members of the said committee to order a primary election for the office of sheriff and to place relator’s name on the parish ticket to be voted on for the Democratic nomination of candidate for such office. The case was tried on exceptions and answer, and there was judgment in favor of the defendant. Relator has appealed.
The judge of the district court arrived at the conclusion that the Democratic parish committee had power and authority to determine the party affiliation of any person filing an application to become a Democratic candidate at the primaries, and that the right of appeal, if any, from their decisio'n, lay to the Democratic central committee. On the other hand, the contention of relator.is that as to such applications the duties of the committee are purely ministerial, and therefore can be enforced by the process of mandamus.
It is conceded that none but a “white Democrat” is entitled to become a candidate for a Democratic nomination in this state, under the rules adopted by the party central committee, pursuant to section 9 of Act No. 49, p. 69, of 1906.
It is the declared intent of the act that “none but those affiliating with, and being members of any political party shall participate in any primary election held by said political party.” Section 10. The same section further provides that “every person offering to vote shall be asked by the commissioners of election whether or not he is a member of such party and whether or not he will support the nominees of said primary election; and he shall not be permitted to vote unless he shall answer both of said questions in the affirmative.”
Section 11 provides that any person desiring to become a candidate in any primary election “shall file with the respective officers hereinafter designated, his written notification of his intention to become a candidate at such primary, accompanied by a declaration that he is a duly qualified elector under the Constitution and laws of this state, and that he is a member of the party calling *623 said primary election.” The next section provides that candidates for nomination for United States Senator, Congressman, Govern- or, Railroad Commissioner, Judge of Supreme Court, and other state officers voted for throughout the entire state or congressional or railroad commissioner districts, shall file their applications as provided by section 11 with the Secretary of State, and, as evidence of good faith, mate a deposit of $250. The act does not designate the officers to receive such applications in other cases. Section 13, however, inferentially points to the local committee as the proper authority to receive such applications, and such has been the party usage. The same section empowers the local committee to fix the assessment against each candidate for the purpose of paying, certain election expenses, and further provides that the failure to make payment shall debar the candidate from having his name placed on the official ballot. The act requires only two things of the person desiring to become a candidate in any primary election, to wit, an application in the form prescribed by section 11 and a deposit as required by section 12 or section 13. The act confers no jurisdiction whatever on any person or committee to refuse to receive or to vacate an application made in due form under the statute. The' argument that the parish committee has authority to hold an inquisition over every application, and to determine whether the applicant is a good enough party man to run for office, finds no support in the provisions of the act. As before noted, the power of local committees to receive such application is merely inferential. They certainly have no greater power than the Secretary of State, whose duties under section 12 are purely ministerial.
No one will contend that the Secretary of State, under section 12 of the act, can resolve himself into a political committee and pass upon the parly affiliation of all applicants for nomination. Under the act of 1906, a parish committee has no more power to disregard a proper application for nomination for the office of sheriff than has the Secretary of State to turn down a proper application for nomination for the office of Governor or United States Senator. The naming of the Secretary, of State to receive applications and deposits for nominations to the highest offices of the state demonstrates that the'functions involved are purely ministerial. The statute certainly does not contemplate that the Secretary shall pass judgment on the purity of the faith of his political opponents.
Our conclusion on this branch of the case is that it was the ministerial duty of the defendant committee to order the primary election and to place the name of the relator on the ballots as prayed for.
The arguments on the other side are based on the supposed political necessity of recognizing in the local committee the power of determining in advance the party affiliation of all candidates for nomination in order to exclude persons not recognized as members of the party.. The answer is that the law has not provided for such an inquisition, but has left it to the voters to prevent a rape of the primaries by persons not of their political faith. If a candidate is defeated, that ends the matter. If nominated, his political affiliation is put beyond controversy. The only functions to be performed by the Secretary of State and the local committee in respect to party nominations are to receive applications and deposits and to cause the names of applicants to be printed on the official ballot. If an application is in the form required by section 11 of the act, the duty of filing and acting on it is purely ministerial. No other test or proof of party affiliation or membership is required than a declaration in the written application of the person desiring to become a candidate. ' To hold otherwise would be to abrogate the law, and to leave every *625 elector who may desire to become a candidate at the mercy of the political committees.
The judge a quo correctly states the law when he says that, if the duties of the parish committee are ministerial, mandamus will lie to compel their performance. See State ex rel. Patton v. Judge, 40 La. Ann. 393, 4 South. 50, 8 Am. St. Rep. 532, citing State ex rel. Barbin v. Secretary of State, 32 La. Ann. 579; High, Ext. Legal Rem. 55, 66. In State ex rel. Patton v. Judge, the court said:
“It is true that it has been held by this court that in the absence of special statutory authorization courts are without jurisdiction ratione materise, to entertain cases of contested election. State v. Judge, 13 La. Ann. 89.
“This is a rule widely recognized and generally prevalent, and resting on peculiar principles; but it has never been extended so far to exempt officers, charged with the conduct of elections and with the ascertainment and promulgation of the results thereof, from judicial control to require them to perform the specific duties imposed upon them by law.”
See, also, State ex rel. Supervisors v. Judge, 48 La. Ann. 827, 19 South. 750; State ex rel. Cosse v. Judge, 48 La. Ann. 847, 19 South. 946.
The case of State ex rel. Burke v. Foster, 111 La. 939, 36 South. 32, has no application. In that ease there was a controversy over a nomination, and the law provided a board of contests to decide the dispute. It is significant that Act No. 49, p. 66, of 1906, provides for no appeal to party committees, except after the promulgation of the result of the primary election. Section 25. The object of Act No. 49, p. 66, of 1906, in providing for compulsory primaries, was to secure to the people, free from political dictation, the right and privilege of choosing their public servants. Read in the light of this purpose, the act reveals the intent to forbid the interference of political committees in the conduct of primaries, except in the cases specially authorized by the provisions of the statute.
It is therefore ordered that the judgment appealed from be reversed, and it is now ordered that a peremptory mandamus issue as. prayed for in relator’s petition, and that the-defendants pay costs in both courts.