(138 So. 862)

STATE ex rel. HINYUB et al. v. PARISH DEMOCRATIC EXECUTIVE COMMITTEE FOR PARISH OF JEFFERSON.

No. 31574.

Dec. 7, 1931.

Thomas Gilmore and K. C. Barranger, both of New Orleans, for appellants.

F. A. Middleton, E. Howard M'Caleb, Jr., and John E. Fleury, all of New Orleans, for appellee.

ODOM, J.

Relators, by separate suits, brought mandamus proceedings against the Democratic Executive Committee of the Parish of Jefferson praying that said committee be ordered and directed to receive and file their written notifications of intention to become candidates for the offices of sheriff, assessor, and clerk of court for the parish of Jefferson at the primary election to be held on January 19, 1932; the four suits being consolidated.

They allege that said committee met on October 7, 1931, and ordered, by resolution, that a Democratic white primary election be held throughout said parish on January 19, 1932, for the purpose of nominating candidates for all parish and ward offices and ordered that candidates for nomination file their notices with the chairman of the committee on or before the 17th day of October, 1931, at 12 o'clock midnight; that on October 17th, within the time fixed by the committee for giving notice, they prepared and signed documents addressed to said committee in the form prescribed by law and containing the necessary declaration of their qualification, giving notice of their intention to become candidates for the respective offices of sheriff, assessor, and clerk of court for the said parish; that they made all efforts possible to file their notices with the proper officer of the committee in person, but were unable to do so for the reason that neither the chairman nor the secretary thereof could be found by them; and that as a last resort, they placed said notices together with the filing fee prescribed in a stamped envelope addressed to the chairman at his post office and deposited the same in the United States mail before 12 o'clock midnight.

They further allege that their notices were received by the chairman through the mail on the following Monday morning prior to the meeting of the committee on that date, which meeting was held for the purpose of certifying to the secretary of state the names of all those who had given notice of their intention to become candidates; that the chairman and the committee refused to accept and file their notices on the ground that they were received too late and that the committee refused to certify their names to the secretary of state as candidates. They pray that said committee be now ordered to accept and file their notices and certify their names as candidates.

The respondent committee excepted to the jurisdiction of the court, filed exceptions of no cause and no right of action, and pleas of prescription and estoppel.

Reserving its rights under all said pleas and exceptions, the committee answered admitting that it had met and fixed the time for filing notices by candidates, but denied: First, that relators are qualified electors of

the parish of Jefferson; second, that they were members of the Democratic Party, the party calling the election; third, that they possess the qualifications required by law; and, fourth, denied that relators had made proper efforts to file their notices within the time prescribed by law and by resolution of the committee.

Relators' demands were rejected and they appealed.

The case was heard in this court on Thursday, December 3, the day on which the case of State ex rel. Filex Elston et al. v. Parish Democratic Executive Committee for the Parish of Plaquemines, 173 La. 844, 138 So. 857, was decided.

In view of our holding in that case, counsel for the committee abandoned their exceptions to the jurisdiction of the court, and of no cause or right of action, as well as the pleas of prescription and estoppel, and presented the case on its merits.

1. The committee in its answer especially denied that relators are qualified electors of the parish of Jefferson or that they are members of the Democratic Party, the party calling the election; in sum, it is denied that they possess the necessary qualifications to become candidates at the primary election which had been called, and this is set up as one of the defenses.

The district judge found, to use his language, that "there is no evidence in the record to show that relators or any one of them, except Leonard A. Aucoin, is a resident of the Parish of Jefferson * * * to show that any of the relators resided within the Parish of Jefferson for a sufficient length of time to be qualified under the law to become a candidate * * * to show that any one of relators paid his poll tax or was registered * * * or to show that any one of the relators is a member of the Democratic Party," and he held:

"* * * Since relators are seeking to enforce a political right of which they claim to be deprived, it is incumbent upon them to establish the fact that they have that right. * * * As they have not shown that they are members of the party which they are seeking to coerce through its Committee and have not shown that they are duly qualified electors, entitled to consideration at the hands of this Committee, the Court is of the opinion that they are without right to bring this action."

The court erred in this holding. When a person who desires to become a candidate for an office at a primary election called by a political party presents to the proper officer of the executive committee of that party his verified written notice of intention to become a candidate, in the form prescribed by section 13, Act No. 97 of 1922, the Primary Election Law of the state, the question whether such person does in fact possess all the qualifications necessary to become a candidate is not one which the officer of the committee or the committee itself may question or inquire into at the time the notice is presented for filing. The law in specific terms provides (section 13):

"That *any person desiring to become a candidate* in any primary election held under the provisions of this act shall * * * file with the respective officers herein designated, his written notification of his intention to become a candidate at such primary, accompanied by a declaration that he is a duly qualified elector under the Constitution and laws of this State, and that he is a member of the party calling said primary election, and that he possesses such qualifications as are required by the state central committee of such party."

The question, and the only one which concerns the officer of the committee when a notice of intention to become a candidate is presented for filing, is whether such notice is accompanied by a declaration of the applicant that he is a member of the party calling the primary and that he is a duly qualified elector, etc. If the prospective candidate fails to accompany his notice of intention by such positive declaration, the officer to whom presented may and should refuse to receive and file it. But when such notice, properly signed, verified, and accompanied by the declaration prescribed by the statute, is presented, it is the plain ministerial duty of the officer of the committee to receive and file it. Neither such officer nor the committee itself has jurisdiction to question or inquire into the truth of the declarations made. State ex rel. Trosclair v. Parish Democratic Committee, 120 La. 620, 45 So. 526.

The committee having no jurisdiction to inquire into the verity of the declaration made by the prospective candidate, it follows that the court has none in suits like these, the only purpose of which is to compel the committee and its officers to perform purely ministerial duties.

■■■ One who files a declaration of his intention to become a candidate does not thereby become a candidate in a strict legal sense. He does no more than give notice that he intends to become a candidate. Under section 11, Act No. 97 of 1922, any member of the committee or any person who has filed his application to become a candidate "may file in writing an objection to any other person who has filed his application to become a candidate with the committee calling the primary."

If such objection be filed to the candidacy of an applicant, the person making the objection must set out specifically and in detail the reasons for the objection. Then, and not until then, does the question whether the applicant possesses the qualifications required to become a candidate, become an issue. It is then the duty of the committee to determine whether the applicant is qualified, and if it finds that he is, the decision is final. If, on the contrary, the committee determines that the applicant is not qualified, the applicant may appeal from the decision of the committee to the courts, where the same issues are involved and are to be decided.

Under the precise terms of the act, the qualifications of an applicant to become a candidate do not become an issue until after the filing of the notice and declaration of intention, and not then unless some member of the committee, or some person who has filed his application to become a candidate, raises the issue by filing written specific objections.

2. The facts pertinent to the issue here involved are that the Democratic Executive Committee for the Parish of Jefferson met on October 7 and adopted a resolution calling a Democratic white primary election for the nomination of parish and ward officers, the same to be held on January 19, 1932. The resolution provided that candidates for nomination should file their notices of intention with the chairman of the committee on or before October 17, at 12 o'clock midnight. The meeting was open and public and was attended by numerous persons other than the members of the committee. On October 10, three days later, the resolution was published in full in a local newspaper. There was therefore no star-chamber proceedings, nothing "done in a corner."

Joseph Fisher is chairman and Frank J. Clancy is secretary of the committee. They were both present. In open meeting, Mr.

Fisher announced that Mr. Clancy, the secretary, was authorized to receive and file the notices of those who desired to become candidates.

Mr. Clancy is sheriff of Jefferson parish and has his office in the courthouse at Gretna, but lives at Kenner, twelve miles away. Mr. Fisher lives at Lafitte, some twenty miles from Gretna, the parish seat, and, so far as the record discloses, has no office or regular place of business in the parish. His business calls him away from home and out of the parish at intervals, and it was for this reason that he announced at the meeting that Mr. Clancy was authorized to receive and file notices in his stead.

These relators knew that they could file their notices with either Mr. Fisher or with Mr. Clancy and they knew that the time limit for filing was 12 o'clock midnight, October 17. They made no effort to file their notices until Saturday, the 17th, the last day. But they did during the afternoon and evening of that day, up to midnight, make bona fide, diligent efforts to file them.

When relators got their notices ready to file, which was during the afternoon, they set out to find Mr. Fisher, the chairman. He was not then in the parish, having gone to Baton Rouge in the morning. He testified that during that day he "was in various places, in transit." He left Baton Rouge during the afternoon or evening and reached his home at Lafitte after 11 o'clock p. m. He was not at the courthouse in Gretna at all during the day.

Mr. Clancy, who lives at Kenner, twelve miles away, went to his office in the courthouse at Gretna at 11 o'clock a. m., and stayed there until 12:15 p. m., when he left, caught the 12:20 boat, and went back to Kenner. On arriving at Kenner, he went to his residence at 3 o'clock, where he remained for thirty minutes, after which he went to the business section of the town, where he remained until about 5:40 o'clock, when he left by train for his hunting and fishing camp, which is outside the parish of Jefferson.

These are the facts with reference to the whereabouts of Mr. Fisher and Mr. Clancy during Saturday, the 17th, the last day for filing notices. The record makes it clear, and in fact it is not disputed, that relators could not find either Mr. Fisher or Mr. Clancy after they were ready to file their notices.

In justice and fairness to Mr. Fisher and Mr. Clancy, we must state in this connection that there is nothing to indicate that either one intentionally absented himself or tried to conceal his movements during the day in order to prevent relators from filing their notices. We therefore absolve them from all charges and imputations of bad faith.

But we do find and hold that they did not comply with their whole duty as officers of the committee to all persons whose privilege it was to become candidates for office. The committee set the time limit within which notices might be filed and designated the officer with whom such notices might be filed. That officer was the chairman, Mr. Fisher, who, with the approval of the committee, authorized the secretary, Mr. Clancy, to receive and file such notices as might be presented to him, so that prospective candidates might file their notices with either up to the time limit, which was 12 o'clock midnight on the 17th.

It was the intent of the lawmaker to afford to prospective candidates not only the privilege of filing notices of their intention to become candidates, but the opportunity to do so as well, for the privilege without the opportunity would be of no avail. It was the duty of Fisher and Clancy to afford the opportunity, which involved the further duty of making themselves available to all those who

desired to exercise the privilege of filing. This they failed to do.

█ We do not mean to hold that it is the duty of such officers, under the primary election law, to establish an office at a certain place and to remain there every moment of the time. But it is the duty of those who accept responsibilities such as those imposed upon Fisher and Clancy in this case, and by resolution of the committee, to afford to those who desire to become candidates reasonable opportunities to do so. If they absent themselves from their homes or places of business, where it is understood they may usually be found, it is their duty, especially on the last day, when the time for filing is about to expire, to let it be known in some way where they may be found or to furnish some information as to how a prospective candidate may have his notice filed. Otherwise a citizen might be deprived of the privilege of becoming a candidate.

It is the duty of those in charge of primary election machinery to afford all facilities possible to those who desire to become candidates. The purpose and spirit of the primary election law is to encourage worthy citizens to become candidates for public office, or, as was said in Langridge v. Dauenhauer et al., 120 La. 450, 45 So. 387, 388, "to encourage the multiplication of worthy candidates for nominations to public office, in order that the body of voters constituting a political party, or constituting the electorate at large, may have the benefit of a choice, and not be compelled to accept candidates chosen by the minority or thrust upon them in some other way."

We conclude from the testimony that these officers departed from the custom which had theretofore prevailed in the parish of Jefferson. The only witness who testified as to the custom was Mr. C. A. Buchler, who said he had been a member of the committee since 1920, and several times a candidate for office. He was asked if he was familiar with the practice of the committee, and he said:

"Except that it has been the custom that the chairman would receive the applications, usually at the Court House, up to twelve o'clock at night on the night that they would close. I don't know that there was any ruling to that effect. * * * That has been my understanding—I never did qualify that late."

It is contended that relators were guilty of laches, but that contention finds no support in the record. They had considerable difficulty in getting their applications made out. They first went to an attorney, who refused to write them out because he said he might "get in bad" if he did. They then sought Mr. Clancy to obtain the blanks but could not find him. They finally obtained them from the Attorney General's office in New Orleans.

After signing them, they sought Fisher and Clancy in order to file them. Fisher was out of the parish and Clancy was not at the courthouse. They then went to another member of the committee, Mr. Buchler, and tried to file them with him, but were told that he had no right to receive and file them and that they had to be filed with either Fisher or Clancy. They went back to the courthouse and Clancy was not there. That was about 5 o'clock p. m. They then telephoned to Clancy's residence at Kenner inquiring for him and were told by his wife that he was out of town; that he had left to go to La Branche (Clancy's fishing camp out of the parish). They then went to Fisher's home at Lafitte, about twenty miles from Gretna. Fisher was not at home. His brother, who resides there, made every effort to locate him, without success. They returned to Gretna and went to the home of a deputy sheriff, a woman, thinking possibly she would accept and file their notices. She

was not at home and no one there knew when she would return. It was then late at night.

They then telephoned an attorney to ascertain his opinion as to what they should do. He advised them that under the circumstances the only thing they could do was to deposit their applications in the United States mail before 12 o'clock, addressed to the chairman. This they did at 11:45, and they were received by him the following Monday morning before the committee met to certify the names of candidates to the secretary of state.

The committee refused to accept their notices as coming too late and relators filed formal protests.

Before Mr. Clancy left home at 5:40 p. m., he asked a Mr. Thompson to stay at his residence until 12 o'clock that night and to receive any papers which might be brought to him. It is seriously argued that relators should have gone to Clancy's residence at Kenner and left their notices with Thompson.

But they had not been advised that Thompson or any one else was at Clancy's residence to receive their notices. Furthermore, they had been advised by Mr. Buchler, a member of the committee, and a lawyer by profession, that their notices had to be filed with either Fisher or Clancy. They were therefore looking for them. Mrs. Clancy told relators that Mr. Clancy was out of town. Having this information, we think it was not relators' duty to go to his residence in search of some one to receive their notices.

■ Under the particular circumstances of this case, the relators having done everything possible to file their notices with the chairman and secretary of the committee in person, we think the depositing of the notices in the United States mail, properly addressed to the chairman of the committee, within the time prescribed, should be deemed and accepted as a filing thereof with him at the time they were mailed, at 11:45 p. m., October 17th.

When the committee met on Monday, October 19th, it declined to give effect to relators' notifications and adopted a resolution declaring that Frank J. Clancy, Vic. A. Petrie, and George Heebe were the sole and unopposed candidates for the offices respectively of sheriff, clerk of court and assessor and the nominees of the Democratic Party for those offices.

If this resolution is not annulled in so far as it so declared, these relators will be illegally deprived of their legal rights to become candidates for these offices.

For the reasons assigned, it is ordered and decreed that the judgment appealed from be reversed and set aside.

It is further adjudged and decreed that the notices of Beauregard Miller and of George A. Hinyub of their intentions to become candidates for the office of sheriff of the parish of Jefferson, and the notice of Joseph Duffy of his intention to become a candidate for the office of clerk of court for said parish, and the notice of Leonard A. Aucoin of his intention to become a candidate for assessor for said parish, were all filed within the time prescribed by law and by resolution of the said committee.

It is further adjudged and decreed that the resolution adopted by the Democratic Executive Committee of the Parish of Jefferson on October 19, 1931, is null, void, and of no effect in so far as it declared Frank J. Clancy, Vic. A. Petrie, and George Heebe the sole and unopposed candidates and the nominees for the offices of sheriff, clerk of court, and assessor, respectively.

It is further ordered that peremptory writs of mandamus issue directed to the Democrat-

ic Executive Committee of the Parish of Jefferson and to each of its members, or their successors, and to Joseph Fisher, chairman, and Frank J. Clancy, secretary of the said committee, or their successors, commanding them to accept the written notice of Beauregard Miller and George A. Hinyub of their intentions to become candidates for the office of sheriff, and the notice of Joseph Duffy and of Leonard A. Aucoin of their intentions to become candidates for the offices of clerk of court and assessor, respectively, as well as their deposits, and commanding them to certify forthwith the names of Beauregard Miller, George A. Hinyub, Joseph Duffy, and Leonard A. Aucoin to the secretary of state as candidates for the respective offices named, to be voted for at the primary election to be held on January 19, 1932.

It is further ordered that defendants pay all costs.

ST. PAUL and BRUNOT, JJ., dissent.