For the reasons assigned, the judgment appealed from is affirmed.

**143 So. 393**

**LE BLANC v. HOFFMANN et al.**

**No. 32039.**

Aug. 19, 1932.

On Rehearing Sept. 8, 1932.

Long & Wilkinson and Charles J. Rivet, all of New Orleans, and Harvey Peltier, of Thibodaux, for relators.

Howell & Deramee, of Thibodaux, and Charles T. Wortham, of Donaldsonville, for respondent.

In this case, his honor, Mr. Justice LAND, being absent, and the remaining members of the court being evenly divided in opinion as to the decision of the case, Judge Archibald T. HIGGINS, of the Court of Appeal, Parish of Orleans, was called upon to take part in the decision, and pronounced the judgment of the court as follows, viz.:

HIGGINS, Judge ad hoc.

This case is before us on a writ of certiorari directed to the Honorable Robert B. Butler, judge of the Seventeenth judicial district court for the parish of Lafourche. The question presented for our consideration is the propriety of the action of the trial judge in issuing a preliminary injunction "restraining, pendente lite the defendants E. R. Hoffmann, Hubert A. Lafargue, G. E. Payne and P. D. Martinez from submitting to the respective Parish Committees in the Second Public Service Commission District of the State of Louisiana any names of voters to be placed in the respective receptacles from which the five commissioners of election are to be drawn for each Precinct in the Democratic Primary Election to be held on September 13th, 1932."

It is alleged in the petition for the injunction that the plaintiff, Dudley J. Le Blanc, is a bona fide candidate for the Democratic nomination for the office of member of the Louisiana public service commission, Second public service commission district of Louisi-

ana, in the Democratic primary election to be held on the 13th day of September, 1932; that as such candidate he has the right to submit to each parish committee in each parish in the said public service commission district, the name of one duly qualified voter to act as commissioner of election for each voting place in the respective parishes, except in such parishes and precincts as there are local candidates; that the four persons named as defendants "have conspired together, and have, either collectively or individually, lent their names as pretended candidates for the Democratic nomination for the office of member of Public Service Commissioner in said district, merely for the purpose of adding four additional names of voters in each precinct of said Public Service Commission District where there are no local candidates"; that "for such purpose the said four defendants have each of them filed with the Chairman of the Democratic Executive Committee for the Second Public Service Commission District of Louisiana notification of intention to become a candidate for the Democratic nomination for member of the Public Service Commission of Louisiana in said district"; that "if said four defendants are permitted as candidates to furnish each one name for each precinct in each parish to the respective parish Democratic committees in said Public Service Commission District, it will increase by four the number of names in each precinct in said district, and petitioner's chance of having a commissioner representing him to be drawn will be very much lessened and decreased"; that "not one of the said four defendants has ever had any intention to becoming a candidate for the office of Public Service Commissioner at said

primary"; that "each of the said four defendants has merely permitted the use of his name to be entered as a candidate in order to procure for certain real candidates, whom they favor, a chance of naming all or nearly all of the commissioners to serve at the various precincts in said Public Service Commission District at said primary election"; and that "such action on the part of said defendants constitutes a fraud upon the rights of petitioner as a real and bona fide candidate at said primary election, and that if they are permitted to have names submitted by them as aforesaid placed in the receptacle from which the names of commissioners are drawn for each precinct, the injury will be irreparable."

To this petition for injunction the defendants, through their counsel, filed an exception to the jurisdiction of the court ratione materia and an exception of no right or cause of action. They further pleaded the fact that they had complied with all the laws of the state regarding the method of qualifying as candidates for the position for which they announced their intention to be candidates; and that, no objection having been filed before the proper committee, as required by the provisions of the primary law, and their names having been duly certified to the secretary of state, they contend that neither the plaintiff nor any other person whatsoever has any legal right or interest to impugn their motives.

On the trial of the rule nisi, the respondent judge, after having heard argument upon the exceptions, reserved his ruling, declaring that his conclusions in that respect would be thereafter announced and proceeded to try the rule on the merits.

During the course of the trial the plaintiff called one of the defendants, Edward R. Hoffmann, to the stand for the purpose of cross-examination. He was asked concerning his good faith in offering for the position of public service commissioner. His counsel promptly objected upon the ground that the testimony sought to be elicited was not responsive to any of the allegations in the petition, and upon the further ground that the court was without jurisdiction to inquire into the bona fides of the defendants. These objections were overruled, whereupon counsel for defendants admitted, subject to his objections and with reservation of his rights under his exceptions, "that the witness on the stand, if examined in this case, and the other three defendants in this case, if placed on the stand and examined, would testify in accordance to the allegations of facts contained in the plaintiff's petition, except as to those allegations of a conspiracy among themselves." In other words, it was admitted that none of the four defendants were bona fide candidates in the respect that they had no intention to run for the office for which they had announced and had qualified merely for the purpose of putting additional names in the list from which the commissioners of election were to be drawn, for the purpose of favoring a candidate other than the plaintiff in this case.

The first question for our consideration is the jurisdiction of the court a qua. It is conceded that all four of the defendants are white men, qualified electors, registered and affiliated with the Democratic Party, and all reside in the proper parish and district. In other words, that they possess all of the qualifications essential to a candidate for the office of public service commissioner (except a bona fide intention to run for the office) and that they properly qualified to become candidates in accordance with the primary election law.

It is also admitted that no objection to their entry as candidates was made before the district executive committee for the Second public service commission district of Louisiana, and that their names were certified by that committee to the secretary of state for the purpose of being placed upon the official ballot. In other words, no objection to, nor contest of the right of defendants to become candidates, was made in accordance with the provisions of section 11 of the Primary Act (Act No. 97 of 1922).

Plaintiff relies upon article 7, section 35, of the Constitution of 1921, which, in general terms, confers jurisdiction upon district courts, "in all cases where the title to real estate, or the right to office, or other public position, or civil or political rights are involved," and contended that no specific legislative authority is necessary for the court to exercise jurisdiction thus conferred.

On the other hand, it is contended by the defendants that the provisions of the Primary Election Law of 1922, as construed by the Supreme Court in a number of cases, has been held to be exclusive of all rights and remedies of candidates in primary elections. That the method there provided for the questioning of the qualifications of candidates is the only method by which the qualifications of a candidate may be contested.

It must be conceded that if the court had jurisdiction and, consequently, the power and authority to determine or inquire in-

to the bona fides of aspirants for office in political primaries, the defendants were properly disqualified. To countenance the practice here resorted to would lend judicial sanction to the destruction of the objects and purposes of the Primary Law, the most important of which was to insure fairness in primary elections. But, however reprehensible the practice may be, and though attended with unwholesome and unjust consequences, we cannot justify judicial encroachment upon the legislative domain upon that ground; consequently, if the courts are without authority to inquire into the real or pretended character of a candidate in a primary election because of the lack of judicial authority so to do, no consideration of the gravity of the situation should properly induce the court to overstep the bounds of its jurisdiction by trespassing upon the legislative field simply because we believe the law should be different. We cannot under the guise of interpreting a statute, a proper judicial function, amend it or "remold it nearer to the heart's desire."

It is said that the general provisions of the Constitution relied upon by plaintiff, to the effect that district courts shall have jurisdiction, "in all cases where the title to real estate, or the right to office or other public position or civil or political rights are involved," confers jurisdiction of this controversy. Our answer is that this court has held to the contrary.

In Reid v. Brunot, 153 La. 490, 96 So. 43, the plaintiff unsuccessfully sought to have the court exercise jurisdiction under the same general provision of the Constitution. The court said at page 493 of 153 La., 96 So. 43, 44:

"The first question to be determined is as to the source and extent of the courts' jurisdiction and power over the parties and subject-matter of this controversy.

"It is a well-settled and established principle of law that all elections and all matters relating to or affecting the same, belong to the political department of the government and are, therefore, beyond the control of the judicial power, in the absence of special constitutional or statutory authorization. No person has a right to invoke the aid of the courts in an election contest, unless there be some express law vesting the courts with jurisdiction and conferring such right of action upon the contestant.

" 'The right to contest an election is not a natural right but exists, if at all, in the Constitution or statutes.' 20 C. J. 222.

"In State v. Judge, 13 La. Ann. 89, this court said:

" 'The contesting of votes is not a judicial function, only so far as made such by special statutes. Indeed, some may have gone so far as to question whether it is not wholly a matter of administration which cannot with propriety be referred to the judicial tribunals at all. At any rate it is clear that such tribunals cannot usurp any greater control over this business than is specially imposed upon them by law. In the absence of a statutory authorization, they are without jurisdiction of the matter, ratione materiæ.'

"During the lapse of more than 60 years since that decision was rendered, this court has never questioned its correctness. On the contrary, it has been expressly affirmed in many cases. It was cited with approval in State v. Police Jury, 41 La. Ann. 846, 6 So.

777, and its doctrine was accepted and adopted in State v. Foster, 111 La. 1087, 36 So. 200; Darbonne v. Village of Oberlin, 121 La. 641, 46 So. 679; and Roussel v. Dornier, 129 La. 930, 57 So. 272, 41 L. R. A. (N. S.) 557.

"It is argued on behalf of appellants, however, that whatever may be said about the contesting of elections and of votes being a political question heretofore, the people of the state of Louisiana in constitutional convention, through their delegates, have made it a judicial question and that plenary power is now lodged in the courts to hear, try, and determine all contested election cases. In support of this contention, counsel cite article 8, § 4, of the Constitution of 1921, providing, among other things:

" 'The Legislature shall enact laws to secure fairness in party primary elections, conventions, or other methods of naming party candidates.'

"And section 12 of the same article, reading:

" 'The Legislature shall provide by law for the trial and determination of contested elections of all public officers, whether state, district, judicial, parochial, municipal or ward (except Governor and Lieutenant Governor), which trials shall be by the courts of law, and at the domicile of the party defendant.'

"Counsel also rely upon section 27 of Act No. 97 of 1922, enacted by the Legislature in pursuance of the constitutional mandate.

"It is likewise urged that, under the constitutional grant to the courts to hear and determine the *right to office* or other civil and political rights, the present controversy is cognizable by the judicial tribunals.

"In so far as the last-mentioned contention is concerned, it is to be noted that section 35 of article 7 of the Constitution of 1921, conferring jurisdiction upon the courts, in cases where the right to office or other political position or civil or political rights are involved, is the same provision as was contained in article 109 of the Constitutions of 1898 and 1913.

"In State v. Foster, cited supra, this court interpreted this provision as contained in the Constitution of 1898, holding that the grant of authority therein did not include the question of party nominations, 'which must be determined by the party itself or by certain public officials as provided by statute.' "

The courts of this state have jurisdiction in matters involving the proper administration of the Primary Law by the officials charged with its execution, and a mandamus will lie to compel the performance of a ministerial duty imposed by the primary law, and an injunction will issue to restrain an attempted act in violation of its provisions. State ex rel. Elston v. Parish Democratic Executive Committee, 173 La. 844, 138 So. 857; State ex rel. Trainor v. St. Paul, 111 La. 714, 35 So. 838; State ex rel. Trosclair v. Democratic Committee, 120 La. 620, 45 Sc 526; State ex rel. Hinyub v. Committee, 173 La. 858, 138 So. 862; Parker v. Democratic Committee, 5 La. App. 712; State ex rel. Labauve v. Michel, 121 La. 374, 46 So. 430; Maggiore v. Lochbaum, 139 La. 425, 71 So. 727; Hart v. Picou, 147 La. 1017, 86 So. 479; State ex rel. Dobbins v. McDermott, 155 La. 211, 99 So. 41; Dastugue v. Cohen, 14 La.

App. 475, 131 So. 746; Melerine v. Democratic Committee et al., 164 La. 855, 114 So. 711; Langridge v. Dauenhauer et al., 120 La. 451, 45 So. 387. There is no such issue in the case before us. The objection to the candidacy of the defendants is based upon their alleged disqualification. It is not pretended that they have failed in any express requisite of the Primary Law. On the contrary, it is admitted that they have met every one of the conditions mentioned in that act. But, it is said, they are nevertheless disqualified for the reason that by necessary implication one of the essential requisites of a candidate is a bona fide intention to run for the office for which he announces, and that the question of whether or not he is a bona fide candidate may properly be considered by the court. We are met with the provisions of the primary law which provides that objections to the qualifications of a candidate must be made before the executive committee of the district, and if the defendants in this case are disqualified because of their failure to meet an implied condition under the Primary Law the question must be presented to the executive committee and, if maintained, may thereafter be brought before the courts. See section 11, Act No. 97 of 1922.

It is also contended that the disqualification urged in this case goes further than the failure to comply with one of the express requisites of the act for the reason that the defendants, not being in good faith, are not candidates at all and, therefore, the Primary Law has no application to them because it is intended only to relate to candidates for office. But this is only another way of saying that they are disqualified for the reason that it makes no difference what particular essential is lacking, whether it be nonresidence, or the failure to possess poll taxes, or the failure to register, or to declare party affiliations, or, as is contended in this case, the failure to possess a bona fide intention to become a candidate. The result is the same, the candidate is disqualified in each and every instance or, as it is stated, no candidate, by reason either of the expressed or implied provisions of the primary law.

Section 11 of the Primary Law provides:

"That any member of any committee calling a primary election, or any person who has filed his application to become a candidate, may file in writing an objection to any other person who has filed his application to become a candidate with the committee calling the primary; that said objection shall contain in detail the reasons why such other candidate is not a duly qualified candidate under the qualifications prescribed by the party calling the primary; provided, however, that any such objection shall be made within five days after the last day upon which persons may file notification to become candidates. Wherever such objection shall have been filed the committee calling the primary shall convene 48 hours after the objection shall have been placed in the hands of the chairman of the committee and served upon the person interested, and determine within 24 hours after the objection and answer to same, if one be filed, shall have been heard, whether or not the person applying to be a candidate is qualified, and in event that the committee shall determine that such person is so qualified, the decision shall be final; in event the committee shall determine that such person is not so qualified, such person shall have the right to appeal from the decision of the com-

mittee to any court of competent jurisdiction, and that the jurisdiction of the court, time of filing petition and answer procedure and appeal shall in all things and as far as applicable be as provided for contested election cases under Section 27 of this Act, except that the Executive Committee whose ruling is complained of shall be made party defendant and a certified copy of the petition served on the chairman, and the petition so presented and served shall set forth the error, whether of fact or law, complained of."

The failure of the plaintiff in this case to appeal to the executive committee is fatal for the reason that it is only after resort has been had to the executive committee that the courts have any jurisdiction in the premises. It may be said that resort to the executive committee is frequently useless, as they are often controlled by individuals hostile to the contestant because affiliated with opposing factions or for other reasons and, if that be true, it is a situation beyond the control of the courts. It is the result of the imperfection of human institutions or the failure of the Legislature to circumvent partisanship in the committee, but, whatever may be the cause, it is in no sense a matter which the courts have any authority to correct. State v. McDermott, 155 La. 211, 99 So. 41.

Our conclusion is that the plaintiff's case must fail.

For the reasons assigned it is ordered that the alternative writ of certiorari heretofore issued be and it is hereby made peremptory and, accordingly, it is ordered that the judgment of the Seventeenth judicial district court, under review, be annulled, avoided, and reversed, and it is now ordered that the ex-

ception of jurisdiction ratione materiæ filed by the defendants herein be and the same is maintained and plaintiff's case dismissed.

O'NIELL, C. J., and ROGERS and ODOM, JJ., dissent.

ROGERS, J. (dissenting).

I think the case presents a justiciable issue. This suit and another suit filed in the same judicial district but in a different parish are directed against nine persons who have entered as candidates for the Democratic nomination for public service commissioner in the Second district. By agreement of the parties the decision in this case is decisive of the other case.

Plaintiff makes the direct and serious charge that the nine defendants, in fraud of plaintiff's rights, entered into a conspiracy with one another and, either collectively or individually, lent their names as pretended candidates for the nomination merely for the purpose of adding nine names to the names of the voters in each precinct of the district from which commissioners to serve at the primary election on September 13, 1932, are to be drawn; that it was solely for this purpose that the nine defendants filed notifications of intention to become candidates, although not one of the defendants ever had any such intention; and that they permitted their names to be entered as candidates in order to procure for certain real candidates whom they favor a chance of naming all or nearly all the commissioners of election at the various precincts throughout the district.

Defendants by formal pleas and express objections to evidence challenged the authority of the courts to inquire into the subject-mat-

ter of plaintiff's complaint. Their challenge was unsuccessful in the court below, but has been upheld by a majority of the members of this court.

The majority opinion, as I understand it, rests upon the assumption that the question for decision is purely political in character, and, as such, is governed by section 11 of Act No. 97 of 1922 (the Primary Law), which is quoted in full in the opinion. That plaintiff having failed to file his objections before the committee calling the election, as provided by the section, the omission is fatal, and his case must fall. Reid v. Brunot, 153 La. 490, 96 So. 43, is cited in support of the proposition.

The fundamental error, as I see it, in the prevailing opinion is that it fails to recognize the distinction between the quality of defendants as candidates and their qualifications as such. Their quality is expressed by the position they assumed or asserted when they filed their intentions to become candidates; whereas, their qualifications for the assumed or asserted position must be determined from an examination of the requisites prescribed by law therefor. It is the latter which on objection by any member of the committee or by an opposing candidate within the time prescribed by the statute must be passed on by the committee. This clearly appears from section 11, which reads in part as follows, viz.:

"That any member of any committee calling a primary election, or any person who has filed his application to become a candidate, may file in writing an objection to any other person who has filed his application to become a candidate with the committee calling the primary; that said objection shall contain in detail the reasons why such other candidate is not a duly qualified candidate *under the qualifications prescribed by the party calling the primary*." (Writer's italics.)

Plaintiff does not deny that defendants possess the qualifications prescribed by the party calling the primary for the office of public service commissioner. Plaintiff's complaint is leveled at the fraudulent assumption by defendants of the status of candidates for that office in violation of the provisions of the Primary Law itself.

It will not be disputed, I take it, that the Primary Law was enacted to regulate and govern the relations among real candidates and not among fictitious candidates. A person may be a real candidate and yet be disqualified for failure to possess one or all of the arbitrary requirements of the law. In other words, he may be unfit to be a candidate, because the law so decrees. But a fictitious candidate may possess all the qualifications prescribed by law, and yet he is not a candidate, because it is not his intention to offer himself to the suffrage of the electors. If a person is a fictitious and not a real candidate, it is not important to inquire whether he possesses the qualifications prescribed by law.

Section 25 of the Primary Law imposes the duty on the parish committees to draw commissioners of election from names furnished them by state officers, district officers, and members of Congress where there are no candidates for local offices to be nominated.

Plaintiff charges that the nine defendants never had any intention of becoming candidates for the office of public service commissioner, and merely entered as such for the

sole purpose of participating in the drawing of election commissioners in the interest of certain real candidates whom they favor, with the view of giving control of the election machinery to the favored candidates.

The case, therefore, calls for the interpretation of section 25, which is the statutory authority for the selection of commissioners of election, who can only be selected in the manner prescribed thereby. Under section 25 each candidate for office is entitled to send in to the various parish committees the name of one or more qualified voters for each precinct in the parish, from which names the commissioners of election shall be drawn.

The question to be determined therefore is: Who are candidates within the meaning of the Primary Law entitled to select representatives at the polls? Does the law contemplate that mere "dummy candidates" may compete in such selection with the real candidates? That one who is a real candidate may, through the assistance of "dummy candidates," secure all or a majority of the commissioners at each precinct and thereby control the election machinery in his own interest? In my opinion, the question is a legal and not a political question. When submitted to judicial scrutiny, as it should be, the question answers itself.

The dominant idea pervading the statute is the absolute assurance to a bona fide candidate that he will be properly represented at the polls and that the wishes of the electors as to his candidacy may be expressed through their ballots fairly cast and honestly counted. This is the only way in which there can be put into effective operation in primary elections that fundamental principle of democ-

racy which makes the will of an unfettered majority controlling.

It cannot truthfully be said that the equitable idea of the Primary Law is carried out at an election in which through a subterfuge one of the candidates is wholly in control of the election machinery.

The doctrine announced in the case of Reid v. Brunot, which involved a controversy among bona fide candidates, has never been extended, nor do I think it can be extended, to exempt from judicial control and restraint mere intruders into an election contest.

The plaintiff in this case is seeking to enforce what I conceive is a clear legal right granted him by the primary law. And this court has frequently exercised jurisdiction for the purpose of securing civil or political rights under that law or to prevent the usurpation or derogation of such rights. See State ex rel. Trainor v. St. Paul, 111 La. 714, 35 So. 838; State ex rel. Trosclair v. Democratic Committee, 120 La. 620, 45 So. 526; Maggiore v. Lochbaum, 139 La. 425, 71 So. 727; Hart v. Picou, 147 La. 1017, 86 So. 479; State ex rel. Dobbins v. McDermott, 155 La. 211, 99 So. 41; State ex rel. Elston v. Democratic Committee, 173 La. 844, 138 So. 857; State ex rel. Hinyub v. Democratic Committee, 173 La. 858, 138 So. 862.

Thus, in the case of Dobbins v. McDermott, the court held that the court and not the committee was vested with jurisdiction to interpret and enforce the primary law, where no candidate was nominated at a primary, and the committee proposed to certify the names of the three highest instead of the four highest candidates, there being two offices to be filled.

In State ex rel. Trosclair v. Democratic Committee, at page 625 of 120 La., 45 So. 526, 527, the court said:

"The object of Act No. 49, p. 66, of 1906, in providing for compulsory primaries was to secure to the people, free from political dictation, the right and privilege of choosing their public servants. Read in the light of this purpose, the act reveals the intent to forbid the interference of political committees in the conduct of primaries, except in the cases specially authorized by the provisions of the statute."

In State ex rel. Trainor v. St. Paul, this court ordered the district judge to issue an injunction, enjoining the Democratic parish committee from enforcing a rule providing for the selection of additional election commissioners. The court said, at page 716 of 111 La., 35 So. 838, 839, "We are of opinion that plaintiff was entitled to his remedy by injunction. He has no *practical remedy* except a resort to the supervisory powers of this court." (Writer's italics.)

If the courts have jurisdiction to protect by injunction a candidate for membership on a political committee, I cannot see how it can be convincingly argued that they have no jurisdiction to protect by injunction a candidate for the more important office of public service commissioner.

And in Dastugue v. Cohen, 14 La. App. 475, 131 So. 746, in which a writ of review was refused, the court held, in substance, that under the Primary Law party committees are part of the state government and their members are officers of the law; and that under the Constitution and statutes of the state

courts should exercise jurisdiction where their failure to do so would result in a denial of justice.

On the merits, the defendants admitted all plaintiff's allegations of fact, except as to the allegations of conspiracy among themselves. Under the admission, the trial judge could not do otherwise than hold that defendants were not candidates within the meaning of the primary law, and to enjoin them from furnishing the names of voters to be placed in the receptacles from which election commissioners are to be drawn for service in the various precincts of the Second public service commission district in the Democratic primary election on September 13, 1932. His judgment should not be disturbed.

ODOM, J.

I concur in this dissenting opinion.

On Application for Rehearing.

ST. PAUL, J.

When this case was decided I had intended to file a concurring opinion,[1] but I thought that Judge HIGGINS (obiter dicta put aside) had so clearly disposed of the issues involved that nothing more was needed. However, subsequent events have led me to believe that a restatement of the issues, and of the view which I took of them, which impelled me to the same conclusion as he had reached, would be not inappropriate; for as Lord Mansfield said, " 'Tis pity that reporters [and others] sometimes catch at quaint expressions that may happen to be dropped at the bar or bench, and mistake their meaning." Miller v. Race, 1 Burr. 452.

---

[1] For the "concurring opinion," see Appendix and note at end of this case.

## I.

The question presented in this case is not a new one before this court. Nearly five years ago (November 28, 1927) this court had before it, and disposed of, the case of Melerine v. Democratic Parish Executive Committee of St. Bernard Parish, reported 164 La. 855, 114 So. 711, involving *exactly* the same point presented in this case. And the court was then constituted as it is at present, except that Mr. Justice Thompson has since then been succeeded by Mr. Justice Odom. The opinion in the case was written by this writer and concurred in, *as written*, by Justices Overton, Land, Rogers, Brunot, and Thompson. The Chief Justice dissented; but his written reasons do not show that he dissented upon that part of the opinion which deals with the point involved in the case now before the court.

Less than a year ago (December 7, 1931) this court had before it, and disposed of, another phase of this very same question in State ex rel. Hinyub v. Parish Democratic Executive Committee for Jefferson Parish, reported 173 La. 857, 138 So. 862, Mr. Justice Odom wrote the opinion and it was concurred in, *as written*, by the Chief Justice and by Justices Overton, Land, and Rogers. Justice Brunot and this writer dissented without written reasons, but their concurrence in the Melerine Case argues that their dissent could not have been based on a disagreement with Justice Odom's opinion so far as it dealt with the question with which we are now concerned.

## II.

Nearly twenty-five years ago (January 9, 1908) this court then composed of Chief Justice Breaux, and Justices Nicholls, Monroe, Provosty, and A. D. Land, speaking through Justice Provosty, in Langridge v. Dauenhauer, reported in 120 La. 450, 45 So. 387, 388, said (unanimously):

"There is nothing in * * * the statute [the Primary Election 'Law, then Act 49 of 1906], to indicate that it was the purpose of the law makers to obstruct with mere technical difficulties * * * *the right, which every citizen has,* to seek the approval of his political associates, or of the public at large. To the contrary, the whole spirit of the legislation *is to encourage the multiplication of worthy candidates* for nominations to public office, in order that the body of voters constituting a political party, or constituting the electorate at large, may have the benefit of a choice, and *not be compelled to accept candidates chosen by the minority or thrust upon them in some other way.*" (Italics mine.)

The Primary Law, then as now, draws no distinction between so-called *serious* and so-called *frivolous* candidates (termed "dummies" in the cant of the day), *wisely* appreciating the fact that it is *for the voters themselves,* and not for courts of law and political committees, to determine *(in advance of an expression thereon by the voters)* who, among the candidates offering for the nomination, are *serious,* and who are *not;* and who are *worthy* and who are *not.* Those great judges (for they *were* great judges, *all*) said nothing about *serious* and *frivolous* candidates, and no such distinction was ever heard of until to-day. A *serious* candidate is simply any candidate who *will accept the office, if he can get it,* and takes steps by which he might get it. And no one can injure another by using his law-given right to become a candidate for

a public office. *"Qui jure suo utitur, nemini facit injuriam."*

And for the *practical* result contemplated by the Primary Election Law, the worthiest and most serious candidate is simply the candidate who *gets the most votes*—which cannot be known in advance of the election.

### III.

Eleven years ago almost to the day, there was a primary election for nomination for Judges of the Supreme Court (August 23, 1921). There were two vacancies. I was a candidate for one of the nominations and was defeated, only to be nominated for *the other vacancy* within the next 60 days. My troubles are my own, and I do not mean to burden any one with them. But the circumstances under which I became the nominee for *the other vacancy* have a bearing on this case.

The Hon. Emile Godchaux, with whom I had the pleasure and distinction of serving on the Court of Appeal for nearly ten years, who was an honor to that bench and would have been an honor to any bench on which he was called to sit, was one of four candidates for that other vacancy, and was opposed by three able, worthy, and distinguished lawyers. He was the choice of the voters; who paid him the graceful compliment of giving him a majority of 2,000 over all, and of two to one over his nearest competitor.

*After* the election, and whilst Judge Godchaux was still receiving the congratulations of his admirers and friends, but "within the time prescribed by law," one of his opponents raised before the courts the question of his qualifications, to wit, that he was not a legally "bona fide" resident of the state and

district within the meaning of the Constitution.

Just as "all roads lead to Rome," so also do all lawsuits in this state head, directly or indirectly, towards the Supreme Court; and the case of Hall v. Godchaux eventually reached this court. It is reported in 149 La. 733, 90 So. 145, 149.

Under the then existing Primary Election Law (Act No. 49 of 1906), the question of a candidate's *"qualifications"* could be raised at any time, *even after the election*, provided it was raised within two days after the promulgation of the returns by the secretary of state.

The case was heard before a court of "seven judges," the new Constitution having added two judges to the former number of five. The regular judges of the court were Monroe, C. J., and Provosty, O'Niell, Dawkins, and Overton, JJ.; and because of vacancies, Judges Porter, of the Court of Appeal, Second Circuit, and Brunot, of the district court of Baton Rouge, were called in to make up a full bench.

The court was unanimous in paying tribute to the sincerity and honesty of purpose of Judge Godchaux; but divided four to three on the question whether or not Judge Godchaux was a legally "bona fide" resident of the state and district.

Mr. Justice Dawkins was the organ of the court. Speaking for the majority, in an able and learned opinion, wherein the law and the facts are exhaustively marshalled and reviewed, he held that: "The record, we think, discloses that Judge Godchaux was in good faith and that he intended to make the De Soto Hotel, [in New Orleans] his voting

domicile, if that were legally possible under the facts which we have outlined." But "Unfortunately for Judge Godchaux, the law does not allow one to become an elector by constructive residence, nor is the matter controlled solely by intention, no matter how bona fide it may have been." And thereupon he announced the conclusion of the majority of the court that: "Defendant [Judge Godchaux] was not an elector under the Constitution and laws of this state, in that he was not an actual bona fide resident [of the State] * * *; hence he is precluded from receiving the nomination for the place which he seeks." Chief Justice Monroe, Justice O'Niell, and Judge Brunot concurred. Justices Provosty and Overton, and Judge Porter, dissented; being of opinion that "defendant [Judge Godchaux], at the time of the primary, was an elector of * * * the parish of Orleans, and eligible to the office of Associate Justice of the Supreme Court from the First Supreme Court district."

Whereupon the judgment of the court was "that the nomination of the defendant, Emile Godchaux, be annulled, and the primary election set aside and held to have been without effect." Oct. 3–15, 1921.

Thereupon the state central committee met and was about to name a candidate in the place and stead of Judge Godchaux. Act No. 49 of 1906, § 29.

Whereupon the Governor of the State, on the advice of the Attorney General, canceled the existing call for a "General Election," but issued a new call for a "General Election" shortly afterwards. It was at the primary election which preceded this newly called "General Election" that I became a candidate for the second time, and was nominated.

## IV.

The Hall-Godchaux Case itself has no bearing here, but it is from the history of that case, and the events which gave rise to it, that we learn the genesis of our existing primary law, and the *purpose* thereof (Act No. 97 of 1922, p. 178), and particularly of section 11, p. 181, of said act, the like of which was not contained in the former Primary Law (Act No. 49 of 1906) under which the Hall-Godchaux Case found its way into the courts; for there was no provision in the former law, as there is in the existing law, requiring that any *"objection"* to a candidate shall be made before the committee calling the primary, and "shall contain in detail the reasons why such other candidate is not a duly qualified candidate under the qualifications prescribed by the party calling the primary," and requiring further that "such objection shall be made within five days after the last day upon which persons may file notification to become candidates"; and providing that if such objection be *not* sustained by the committee their action shall be *final*, and recourse may be had to the courts *only* when such objection is sustained and *only* by the person thereby declared disqualified. Vide section 11, aforesaid.

It is urged that the only "qualifications" which must be challenged *before the committee* are the qualifications "prescribed by the party calling the primary." Well, are we to have another Hall-Godchaux Case, if the ingenuity of counsel can discover some constitutional, or legal, or supposed equitable or moral, ground for disqualifying a candidate, which are *not* "prescribed by the party calling the primary"?

Judge Godchaux was not disqualified because of any lack of "qualifications prescribed by the party calling the primary"; he was declared disqualified for lack of a qualification prescribed *only* by the Constitution. Are we to suppose that the Legislature of 1922, which passed the new Primary Law within a few months after the Hall-Godchaux Case was decided, was a body so inane and incompetent that, being intent on preventing a recurrence of such cases, *it did everything else but that?*

And what judge, sitting to administer the laws of the state, and forbidden to distinguish between "odious laws and laws entitled to favor" (R. C. C. art. 20), has a right to declare, *as a judge*, that to be *"reprehensible"* which the law permits.

Every one knows, *as an individual*, that he has the instincts of a thief who buys real estate, knowing it to have been already sold but the deed *not registered.* Yet, a great judge, my honored predecessor on this bench, has said that the law does not "discriminate between those who acquire property with knowledge of unrecorded titles and those who acquire without such knowledge," and "it cannot be said that one perpetrates a fraud who merely treats as utterly null and void a contract which the law in terms declares 'shall be utterly null and void' [except between the parties thereto]." Monroe, J., in McDuffie **v.** Walker, 125 La. 152, 51 So. 100, 105.

In the eyes of the *judge*, forbidden to distinguish between laws that are odious and laws entitled to favor, that only can be "reprehensible" which the law forbids, and that is lawful which the law allows. When he goes beyond this he is simply setting himself *above the law.*

**V.**

*"Qui haeret in litera, haeret in cortice."* And, "The universal and most effectual way of discovering the true meaning of a law, when its expressions are dubious, is by considering the reason and spirit of it, or the cause which induced the Legislature to enact it." R. C. C. art. 18; Succession of Baker, 129 La. 74, 85, 55 So. 714, Ann. Cas. 1912D, 1181. The spirit of the Primary Law is "to encourage the multiplication of worthy candidates" (Langridge v. Dauenhauer, 120 La. 450, 45 So. 387, 388, supra), and the *worthiness* of a candidate is to be judged exclusively by the voters. See, supra, and cf. State ex rel. Trosclair v. Parish Democratic Committee, 120 La. 620, 624, 45 So. 526. The cause which induced the Legislature to put section 11 into the Primary Law was to prevent a recurrence of the conditions under which the Hall-Godchaux Case, supra, was decided.

Some stress is laid on the *words* of section 11 that "said objection [before the Committee] shall contain in detail the reasons why such other candidate is not a duly qualified candidate under the qualifications *prescribed by the party calling the primary."* (Italics mine.) But the only qualifications prescribed by the party calling this primary and not also prescribed by the Constitution and by law *is that the person shall be a White Democrat.*

Now Judge Godchaux had been deprived of the nomination, not (of course) for lack of the qualifications prescribed by the party, but for lack of the qualifications prescribed by the Constitution. It is therefore untenable, without convicting the Legislature of an absurdity, that section 11 (intended, as above

said, to meet the Hall-Godchaux Case) gave to the committee the right to inquire only whether the candidate was a "White Democrat." That might have been a reasonable interpretation of the law had it been passed to meet the Trosclair Case, 120 La. 620, 45 So. 526, supra, but it is clearly not the proper interpretation to be given to a law passed expressly to meet the Hall-Godchaux Case.

### VI.

No such meaning for the law was claimed in the Melerine Case, 164 La. 855, 114 So. 711, supra, although it would have been advantageous to *either* side to do so; and no such meaning can be given to it now. So that, under the Hinyub Case, 173 La. 857, 138 So. 862, supra, the right of the defendants, who had entered the primary by exactly the same procedure followed by plaintiff, could not be challenged at the time they filed their notification with the chairman of the committee; and under the Melerine Case, 164 La. 855, 114 So. 711, it could not be challenged unless opposition was first made before the committee.

### VII.

And I take it to be self-evident that if defendants were entitled to be candidates they were also entitled to furnish names from which the commissioners at the polls were to be chosen. Section 25 of Primary Law (Act No. 97 of 1922).

### VIII.

But since the decision in this case, and whilst an application for rehearing was pending, *the status of the defendants has changed.*

I have been officially advised by the secretary of state that the defendants have formally *withdrawn* as candidates.

His notice (by wire, which I attach) is dated from the State Capital, September 2, 1932, addressed to me as "Justice of the Supreme Court," signed by "R. H. Flower, Assistant Secretary of State," and reads as follows:

"Ballots to be used in Second Public Service Commission district will have printed thereon the names of Dudley J. LeBlanc and Wade O. Martin only, all other candidates having withdrawn officially."

Hence, if the committee has not already selected the commissioners of election at a time when they were still candidates and entitled to furnish names for commissioners (their *subsequent* withdrawal not affecting their right at the time, nor the regularity of any drawing which *then* took place), they are *now* no longer entitled to furnish names for commissioners, being *now* no longer candidates.

### IX.

And it is a familiar rule of law that an injunction, though improperly issued, will not be dissolved when a new injunction might issue at once.

I think the injunction herein issued improperly, but that a new injunction might *now* issue if the commissioners of election have not yet been chosen.

For this reason, and this reason only, I think a rehearing should be granted, and such disposition be then made of the case as the circumstances thereof may then warrant.

Justices OVERTON, BRUNOT, and HIGGINS state that they concurred in granting a rehearing on the ground that, taking judicial cognizance of the records of the state of Louisiana, it appeared that the relators had withdrawn as candidates, and therefore

respondent should be granted an opportunity of showing what effect that circumstance had upon the jurisdictional question presented. But respondent has made no effort to favor the court with any brief on the subject and has been content to rest his case upon the original record. Upon a review of the case we find that the original judgment of this court herein is legally sound and in accord with the jurisprudence of the state, and therefore the original opinion should be reinstated and made the final judgment of the court.

### ST. PAUL, J.

For the reasons set forth in my opinion on the application for a rehearing, in fine, I think our former judgment should be reinstated to this extent only: That the Injunction issued by the court below be dissolved in so far as it may affect any past action which the committee may have taken, but reinstated as to any action which said committee may take or attempt to take in the future. And I therefore concur in the decree to that extent, and to that extent only.

Chief Justice O'NIELL and Justices ROGERS and ODOM adhere to their opinion that the judgment of the district court is correct.

### Appendix.

[NOTE by ST. PAUL, J.—The "concurring opinion" mentioned in the written reasons I gave on the Application for Rehearing is given below, and sets forth my views. It was written before Judge HIGGINS had announced his conclusion, and was intended to serve as a concurring, or dissenting, opinion as that conclusion might require.]

*(Concurring opinion; not filed.)*

### ST. PAUL, J.

The respondent here, plaintiff in the court below, states his case as follows:

"There are two suits on behalf of Dudley J. LeBlanc, candidate for Public Service Commissioner, one in the Parish of Lafourche, and the second in the Parish of Ascension. The one in the Parish of Lafourche is directed against four persons residing in that parish who qualified as candidates for the Democratic nomination for Public Service Commissioner in the Second District, and the suit in the Parish of Ascension is directed against five persons residing in that parish who likewise qualified as candidates for this same office. * * *

"Now, the admitted facts are that the said nine candidates, either collectively or individually, lent their names as pretended candidates for the said nomination, merely for the purpose of adding nine additional names of voters in such precinct of said district from which the commissioners to serve at the primary election on September 13th are to be drawn; that it was for this purpose that the said nine defendants have, each of them, filed their respective notification of intention to become candidates for said nomination; that not one of said nine defendants has ever had any intention of becoming a candidate for said nomination; but each of said nine defendants has merely permitted the use of his name to be entered as a candidate in order to procure for certain real candidates, whom they favor, a chance of naming all or nearly all of the commissioners to serve at the various precincts throughout said Public Service Commission District." (Respondent's Brief, pp. 1 and 2.)

But before the admissions were made the relators, defendants in the court below, challenged the right of the court to inquire into their motives in becoming candidates, or their status as candidates except as the same was established by the fact that they had filed applications with the chairman of the committee and made their deposits as required by law.

The objections should have been sustained. The law fixes who are candidates, and if candidates, entitled to commissioners. Thus:

"When a person who desires to become a candidate for an office at a primary election called by a political party presents to the proper officer of the executive committee of that party his verified written notice of intention to become a candidate, in the form prescribed by section 13, Act No. 97 of 1922, the Primary Election Law of the state, the question whether such person does in fact possess all the qualifications necessary to become a candidate is not one which the officer of the committee or the committee itself may question or inquire into at the time the notice is presented for filing. * * *

"The question, and the only one which concerns the officer of the committee when a notice of intention to become a candidate is presented for filing, is whether such notice is accompanied by a declaration of the applicant that he is a member of the party calling the primary and that he is a duly qualified elector, etc. If the prospective candidate fails to accompany his notice of intention by such positive declaration, the officer to whom presented may and should refuse to receive and file it. But when such notice, properly signed, verified, and accompanied by the declaration

prescribed by the statute, is presented, it is the plain ministerial duty of the officer of the committee to receive and file it. Neither such officer nor the committee itself has jurisdiction to question or inquire into the truth of the declarations made." State ex rel. Hinyub v. Parish Democratic Com., 173 La. 858, 862–863, 138 So. 862, 863.

And when a party has thus filed his application and made his deposit he becomes definitely a candidate. Thus:

"Defendant filed an exception of no cause of action based on the proposition that plaintiff does not allege in his petition facts sufficient to show that he is duly qualified to hold the office to which he aspires. It was not necessary for him to do so; it sufficed for him to allege that he filed his application with the committee in due time and in due form, that his candidacy was objected to, and that said objection was sustained by the committee. For the aforesaid section 11 requires that any objection to a candidate shall set forth 'in detail' the reason why said candidate is not qualified; so that the only question before the committee is whether said objections be well founded. And since the court can only review the decision of the committee, it follows that any other objections which might have been made, but were not made, are wholly immaterial to the issues before the court. And since new objections cannot be urged before the court which were not set up 'in detail' before the committee, it follows that this plaintiff was not called to anticipate any such new objections by setting forth in his petition, and later on proving, that he has all the qualifications required for the office which he seeks. To hold otherwise would amount, in effect, to allow-

ing objections to plaintiff's candidacy to be made for the first time in the courts and not before the committee, and to allow such objections to be made not 'in detail,' but in the most general manner conceivable, to wit, that his petition 'shows no cause of action.' " Melerine v. Democratic, etc., Committee, 164 La. 855, 859, 114 So. 711, 712.

For:

"There is nothing in * * * the statute, to indicate that it was the purpose of the law makers to obstruct with mere technical difficulties, the exercise of the right, which every citizen has, to seek the approval of his political associates, or of the public at large. To the contrary, the whole spirit of the legislation is to encourage the multiplication of worthy candidates for nominations to public office, in order that the body of voters constituting a political party, or constituting the electorate at large, may have the benefit of a choice, and not be compelled to accept candidates chosen by the minority or thrust upon them in some other way." Langridge v. Dauenhauer et al., 120 La. 450, 451–452, 45 So. 387, 388.

There is nothing in the evidence to show that these candidates would not accept the office if elected to it, and the only competent evidence to show that fact would be the formal withdrawal of their entries; otherwise there are many ways whereby through some turn of fortune, any one of them might be the duly elected candidate of the Democratic Party, and the evident or perhaps necessary selection of its voters.

The ruling of the district judge enjoining the relators from naming commissioners of election was erroneous and should be reversed.