OPINION
REGAN, Judge.
The plaintiff, Carolyn Gay Labouisse, filed this suit against the defendant, Har-wood Koppel, endeavoring to have the defendant adjudicated an ineligible and unqualified candidate for the office of Councilman of District B of the City of New Orleans predicated on the hypothesis that he lacked the proper residence requirements. The plaintiff, who received the third largest number of votes in the first primary seeks to be declared the proper candidate to oppose the leading candidate, Eddie Sapir, in the second Democratic Primary election scheduled to occur on December 13, 1969. Plaintiff, in the alternative seeks to have the entire first primary election for councilman of District B which occurred on November 8, 1969, declared null and void and requests that we order that a new primary election be called for that office.
Eddie Sapir, who received a plurality of votes in the first primary election, filed a petition of intervention endeavoring to have the defendant declared ineligible and disqualified as a candidate in either the first or second Democratic Primary elections. The intervenor further sought judgment against the plaintiff, declaring her ineligible to face him in the second primary, thereby establishing him as the *163 nominee of the Democratic Party for the office of Councilman for District B in the general election scheduled to occur on April 7, 1970.
The defendant answered and generally denied the pertinent allegations of the plaintiff’s petition. In addition, he pleaded the exceptions of prematurity, no right or cause of action, lack of jurisdiction rationae materiae, non-joinder of parties defendant, and a plea of estoppel.
From a judgment maintaining the defendant’s exception to the jurisdiction of the court rationae materiae and his exception of no right of action, both the plaintiff and the intervenor have prosecuted this appeal.
The record discloses that in the first Democratic Primary held on November 8, 1969, for the office of Councilman of District B of the City of New Orleans, no candidate received a majority of votes. Eddie Sapir, the incumbent, finished first, followed by the defendant and then by the plaintiff herein, who finished third. Thus, plaintiff attacks the qualifications of the defendant in an effort to be placed in the second primary against the incumbent and front-runner, Sapir, in the place of Koppel.
The trial judge thoroughly analyzed both the facts and the law applicable to this case in his written reasons for judgment, which, in our opinion, encompasses the issues so fully, insofar as it maintains the exceptions to the jurisdiction of the court, that we adopt them as our own.
“Plaintiff contends that the defendant is not qualified to hold the office which he seeks and that, therefore, if elected, he may not be able to serve as councilman.
“The election which was held on November 8th and the election which will be held on December 13th, are primary elections, which, in the instant case, are held under the auspices of the Democratic political party, and hence are governed by the provisions of the Articles of the Revised Statutes governing the holding of primary elections.
“While it has been repeatedly held that the courts of this state have jurisdiction in matters involving the proper administration of the Primary Law by the officials charged with its execution, and that mandamus will lie to compel the performance of a ministerial duty imposed by the Primary Law (and an injunction will issue to restrain an attempted act in violation of its provisions), in State [ex rel. Rees] vs Foster, [111 La. 1087] 36 So. 200, the Supreme Court held that the provision in the Constitution of 1898 (the same as now contained in the Constitution of 1921) granting certain authority to the courts did not include the question of party nominations, which the Court said ‘must be determined by the party itself or by certain public officials as provided by the Statute.’
“Revised Statutes Title 18, Section 307, which followed earlier statutory provisions, enacted after the decision in the Hall vs Godchaux case,[1] clearly defines the procedure to be followed in contesting the eligibility of a candidate to seek public office. Under the provisions thereof, any qualified elector has the right to question or object to the candidacy of any other person seeking to be a candidate in such primary election. The objection, however, must be filed within five days after the last day upon which notification of intention to become a candidate may be filed. If a party feels aggrieved by any decision of the Committee before whom the objection was heard, then, in that event, appeal may be had to a court of competent jurisdiction for determination of the correctness of such decision.
“There is, however, no provision which gives jurisdiction' to this Court once the Democratic Committee certifies a candidate as authorized to run in a primary election called by the Democratic political party, unless the Committee has failed to perform a ministerial duty. The Supreme *164 Court so held in the case LeBlanc [Le Blanc] vs Hoffman [Hoffmann], 175 La. 517, 143 So. 393, and, ever since that decision, the courts have uniformly held that all objections to the qualifications of a candidate in a primary election must conform with the provisions of LSA-R.S. 18:307, and that if they do not, the court is without jurisdiction to entertain the proceedings.
“While the case of O’Keefe vs Burke, 78 So.2d 161, 226 La. 1026, is cited to indicate a contrary view taken by our Supreme Court, following the many decisions holding as above stated, that case must be distinguished from the instant case in that the O’Keefe case was a contest brought about after the election which determined the party nominee. Ir. the O’Keefe case the final Democratic election had been held, and Mr. Burke, having been named by the Democratic party as its nominee— and there apparently being no other candidates, either independent or bearing other political party labels — was, in effect, elected. Hence, the real question presented to the Court was the qualification of Mr. Burke to take the office to which he had been elected.
“Prior to the decision in the O’Keefe vs Burke case, in the case of Blessing vs Levy, 214 La. 856, 39 So.2d 84 (in which it was contended that Blessing did not have the constitutional requirements to hold the office to which he was elected), although the issue was presented in the form of an “Intrusion into Office” proceeding, and the matter determined as such, the Court, with Justice McCaleb (who dissented in the O’Keefe vs Burke case) as the organ of the Court, said:
‘It is apt to observe that, if appellant believed that appellee was ineligible to hold the office of Judge of the Juvenile Court, she could have tested his qualifications before the Parish Committee and the Courts under the Section 28 of Act 46 of 1940 (Now LSA-R.S. 18:307), the primary law. Having elected not to exert this right, her belated complaint cannot now be entertained * * *’ (Emphasis by this Court).
“In the instant case, no one has been named as the nominee of the Democratic party. The Democratic party has merely held that Mr. Sapir and Mr. Koppel received the largest and second largest number of votes, respectively (neither receiving a majority of the votes cast), and were thus, 'under the provisions of the primary laws of the State, entitled to submit themselves to the electorate for the electorate to determine which of these two persons should be nominated by the Democratic party as their candidate in any general election hereafter held for the office which they seek.
“It may well be that after the second primary is held, wherein the electors may choose Mr. Koppel as the Democratic nominee, then his right to be seated on the City Council may be questioned by one having a right so to do, or he may be refused his seat by the council itself. On the other hand, if Mr. Sapir is chosen as the Democratic party’s nominee then the question is moot.
“The former situation may result in another election being held, or an unqualified person may be seated and may serve. However, as stated by our Supreme Court, in the case of LeBlanc [Le Blanc] vs Hoffman [Hoffmann], hereinbefore cited :
‘If the courts are without authority to inquire into: the real or pretended character of a candidate in a primary election because of lack of judicial authority so to do, no consideration of the gravity of the situation should properly induce the court to overstep the bounds of its jurisdiction by trespassing upon the legislative field simply because we believe the law should be different. We cannot under the guise of interpreting a statute, a proper judicial function, amend it or “remold it nearer to the heart’s desire.” ’
*165 “In the cited case, the Supreme Court also stated:
‘It is said that the general provisions of the Constitution relied upon by plaintiff, to the effect that district courts shall have juridiction “in all cases where the title to real estate, or the right to office or other public position or civil or political rights are involved” confers jurisdiction of this controversy. Our answer is that this court holds to the contrary.’
“The Constitutional Articles to which the Supreme Court, in the O’Keefe vs Burke case, made particular reference are Sections 4 and 12 of Article 8.
“The pertinent portion of Section 4 reads as follows:
‘The Legislature shall enact laws to secure fairness in party primary elections, conventions, or other methods of naming party candidates. No person shall vote at any primary election or in any convention or other political assembly held for the purpose of nominating any candidate for public office, unless he is at the time a registered voter, and have such other and additional qualifications as may be prescribed by the party of which candidate for public office are to be nominated.’ (Emphasis by the Court.)
“The Legislature has carried out this Constitutional mandate by the enactment of LSA-R.S. 18:281 through Section 18:383, and Section 18:307 certainly does not do violence to the Constitutional provisions of Section 4 of Article 8.
“Section 12 of Article 8 reads as follows :
‘The Legislature shall provide by law for the trial and determination of contested elections of all public officers, whether State, district, judicial, parochial, municipal or ward (except Governor and Lieutenant Governor), which trials shall be by the courts of law, and at the domicile of the party defendant.’
“As set forth hereinabove, this Court is of the opinion that the instant suit does not involve any contest as to the election. The sole thrust of the suit is the lack of qualifications of a candidate. There is no charge of any irregularity or fraud as to the election, hence no ‘election contest’.
“Section 13 of Article 8 of the Constitution provides that:
‘No person shall be eligible to any office, State, district, parochial, municipal or ward, who is not a citizen of this State, and a duly qualified elector of the State, district, parish, municipality or ward, wherein the functions of said office are to he performed. And whenever any officer, State, district, parochial, municipal or ward, may change his residence from this State, or from the district, parish, municipality or ward, in which he holds such office, the same shall thereby be vacated, any declaration of retention of domicile to the contrary notwithstanding; provided further, that this article shall not apply to superintendents of public schools.’ (Emphasis by the Court.)
“The Court is of the opinion that this Article cannot apply to any of the candidates involved in the within proceeding. While the City Charter may provide that the candidate reside in the district from which he is to be elected, the fact remains that the place wherein the functions of his office are to be performed is actually the entire City of New Orleans, so that as long as he is a resident of New Orleans he meets the requirements of Section 13 of Article 8 of the State Constitution.
“As stated hereinbefore, he may not meet the requirements of the City Charter, but that is a matter which must be hereafter determined.
“To hold that this Court would have jurisdiction in this matter, or that plaintiff had a right to have this Court pass *166 upon the question of the qualifications of Mr. Koppel, would virtually make useless the provisions of Section 18:307, and the effect of this would be to take away from the political party calling the primary election any power of such determination. The Court would he the arbiter and it would then be supplanting the political party.
“There can be no doubt that this Court would have jurisdiction to pass upon the question of whether or not the Committee of the political party abused its discretion or failed to perform its ministerial duty and to review its findings under the clear language of LSA-R.S. 18:307. The Court also clearly has jurisdiction in contests which fall within the provisions of LSA-R.S. 18:364.
“In this case there are no allegations— either pleaded, or if pleaded, then proven— which would bring this case within the provisions of LSA-R.S. 18:364.
“It is abundantly clear, however, that if this Court should hold that Mr. Koppel was not qualified to be a candidate for the office sought by him, then, under the provisions of LSA-R.S. 18:358 and specially paragraph ‘F’ thereof, which reads as follows:
Tn case of failure to elect because no candidate received a majority of votes cast for the office for which he is a candidate, if one of the two persons receiving the highest number of votes declines to continue his condidacy, dies, or is otherwise disqualified, ¡ the other candidate who has received tjie highest number of votes for the office for which he was a candidate shall be declared the nominee of the party.’ (Emphasis by the Court.)
there would be no second primary, and Mr. Sapir would have to be declared to be the nominee of the Democratic Party.
“If this Court has the power, as claimed by plaintiff to disqualify Mr. Koppel at this late date, then, as set forth in the above quoted paragraph, Mr. Koppel being one of the two candidates receiving the highest number of votes and coming under the provisions of ‘or is otherwise disqualified’, this Court would have to declare ‘the other candidate (Mr. Sapir) who received the highest number of votes cast for the office for which he was a candidate’ as ‘the nominee of the party’.
“There is no provision in either the Constitution or the Statutes which would authorize this Court to either declare the first primary election a nullity or to permit the plaintiff to be placed on the ballot as the opponent of Mr. Sapir in the second primary.
“While, in the instant case, this would mean the voters of District ‘B’ would have seated on the City Council an individual who received only approximately 30% ;of the votes cast, in the Court’s opinion this is the law as now written.
“For reasons set forth hereinabove, the exception to this Court’s Jurisdiction Ra-tionae Materiae, filed herein by the defendant, Harwood Koppel, will be maintained, and plaintiff’s suit will be dismissed at her costs. * * * ”
For the reasons assigned, the judgment appealed from is affirmed.
The plaintiff and the intervenor are to pay all costs.
Affirmed.

. Ref. 149 La. 733, 90 So. 145.